[S. F. No. 1076.    Department One.—March 6, 1899.]

N. C. BRIGGS et al., Appellants, v. JAMES F. BREEN et al., Respondents.

123 657
128 81

123 657
138 370

123 657
142 528

123 657
143 144
143 145
e143 146

Estates of Deceased Persons—Personal Liability of Executors—Services of Attorneys—Reasonable Value.—In the absence of an agreement to limit the liability of executors for the services of attorneys employed by them to such sum as may be allowed from the estate by the court sitting in probate, they are personally liable for the reasonable value of such services, and an action may be maintained against them to recover such reasonable value.

Id.—Settlement of Accounts—Attorney not "Interested in Estate."—An attorney for an executor or administrator is not "interested in the estate" within the meaning of sections 1635 and 1637 of the Code of Civil Procedure and is neither required to contest the accounts of the executor or administrator, nor concluded by the settlement of his accounts.

Id.—Allowance for Attorney's Fees.—The estate is not liable to an attorney, and the allowance for attorney's fees is made to the executor or administrator, and not to the attorney.

·Id.—Contest of Accounts by Attorney—Estoppel—Credit of Amount Received.—The actual appearance of an attorney in the court sitting in probate, and his filing of exceptions to the account of attorney's fees contained in an executor's account, is immaterial, except as evidence bearing upon the question whether he expected to look to the estate or to the executor for his fees. The settlement of the account does not conclude him from claiming a larger sum from the executors personally; but the amount received from the executors must be credited in a personal action against them.

Id.—Joinder of Executor with Administrator of Deceased Executor—Construction of Code.—Under section 379 of the Code of Civil Procedure allowing any person to be made a defendant "who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein," an executor may be joined with the administrator of a deceased executor in an action to recover the reasonable value of services rendered to both executors jointly by an attorney; but the recovery against the administrator of the deceased executor must be limited to payment in due course of administration.

APPEAL from a judgment of the Superior Court of Monterey County.    N. A. Dorn, Judge.

The facts are stated in the opinion.

CXXIII. Cal.—42

Scott & Dooling, for Appellants.

S. F. Leib, for James F. Breen, Respondent.

B. V. Sargent, for E. T. Breen, administrator, etc., Respondent.

BRITT, C.—Action for the alleged value of professional services rendered by plaintiffs as attorneys at law (they being partners in practice) to the defendant James F. Breen, and one John R. Breen, who were executors of the last will of a certain decedent. It appears that the executors employed plaintiffs to conduct the ordinary legal proceedings for the administration of the testator's estate and in the defense of certain actions brought against the executors in their official character; such employment terminated upon the death of said John R. Breen, which occurred August 31, 1894. On July 12, 1895, the surviving executor, James F. Breen, filed in court his final account of the administration; therein he prayed a credit of twelve hundred and fifty dollars for the payment of plaintiffs and alleged that sum to be the reasonable value of their services. Before the account was filed plaintiffs notified the executor that they were dissatisfied with this sum; and after the filing thereof they filed written exception to the same, stating that said sum "is not reasonable compensation for the services of said attorneys, and they ask leave to submit evidence to the court of the value of said services, to the end that said attorneys have from said estate reasonable compensation." Upon the hearing of said account the plaintiffs were, it seems, present in court, but declined to introduce any evidence touching the item aforesaid; and the account was settled and allowed as rendered. Afterward plaintiffs brought this action; the administrator of the estate of John R. Breen, the deceased executor, is joined as a defendant with James F. Breen, plaintiffs having first presented their claim to him for allowance as a debt of said John R. Breen and the claim having been rejected.

The matters above stated appear from the findings of the court or the admissions of the pleadings. The court further found that no agreement or understanding was ever had between plaintiffs and the executors as to the amount of compensation for the

services of plaintiffs, nor the source from which payment was to be made, nor that they should receive such sum as the court should fix on settlement of the accounts of the executors; also, that the reasonable value of said services was the sum of eighteen hundred dollars; but the court held that "By reason of the conclusiveness on plaintiffs of the allowance in the probate court"—meaning the superior court sitting in probate in the matter of said final account—they were entitled to judgment for the sum of twelve hundred and fifty dollars only, which was entered accordingly.

1. Since there was no agreement that the attorneys should look for their fees to the estate or an allowance therefrom by the court, it follows that the executors were liable personally to them for their reasonable compensation; it was so decided in *Dwinelle v. Henriquez*, 1 Cal. 387, and has been more or less distinctly asserted in several cases since. (*Gurnee v. Maloney*, 38 Cal. 85; 99 Am. Dec. 352; *Estate of Page*, 57 Cal. 241; *Estate of Ogier*, 101 Cal. 385; 40 Am. St. Rep. 61; *Estate of Kassen*, 119 Cal. 489.) The law of this state is not peculiar in this regard. "It is a well-recognized principle," says Judge Woerner, "that for liabilities contracted by the personal representative, although for the benefit and in the interest and behalf of the estate, it is not liable to creditors. . . . . It follows that the estate is not liable to an attorney for his services at the instance of an executor or administrator, but that the latter is himself liable in a suit by the attorney." (2 Woerner on Administration, sec. 356.) And to the same effect, among other cases, are *Mygatt v. Wilcox*, 45 N. Y. 306; 6 Am. Rep. 90; *Bowman v. Tillman*, 2 Rob. N. Y. 385; *Parker v. Day*, 155 N. Y. 383; *Thomas v. Moore*, 52 Ohio St. 200; *Barker v. Kunkel*, 10 Ill. App. 407.

2. Section 1635 of the Code of Civil Procedure, relating to the accounting of executors and administrators, provides that "any person interested in the estate" may contest the account on the hearing thereof; and section 1637 following provides that "The settlement of the account and the allowance thereof by the court, or upon appeal, is conclusive against all persons in any way interested in the estate," with a saving in favor of persons under legal disability. Defendants urge that plaintiffs were persons "interested in the estate" within the meaning of these sec-

tions, and are in virtue of the same estopped to claim more than was allowed to the executor for their compensation on settlement of his final account. We cannot agree with defendants. The law being that the estate is not liable to the attorney, it must be also that the attorney is not interested in the estate. This court has often decided that the allowance from the estate for attorney's fees under section 1616 of the Code of Civil Procedure must be made to the executor or administrator, and not to the attorney (*Estate of Levinson*, 108 Cal. 458, and cases cited); which construction of the statute is reasonable in view of the rule that the representative and not the estate is liable to the attorney, but that could scarcely be said if the attorney is really a person interested in the estate to the amount of his fees. It is hard to see how the court, under ordinary circumstances, could compel the representative to take more from the estate for payment of his attorneys than he has himself claimed for that purpose in his account. Unless the attorney has agreed to accept for his fees the allowance made by the court to indemnify the executor or administrator in that behalf, there seems as little reason for saying that he is concluded by the order making such allowance as that persons having claims against the representative founded on the latter's tort or breach of contract, committed while acting for the estate, can be affected by the settlement of his accounts. In the absence of an enabling statute the court in probate cannot adjudicate between such persons and the executor or administrator. (Woerner on Administration, sec. 152, 356; see *Eustace v. Jahns*, 38 Cal. 3; *Estate of Burdick*, 112 Cal. 387; *Sterrett v. Barker*, 119 Cal. 492; *Worrall v. Harford*, 8 Ves. 4; *Johnson v. Leman*, 131 Ill. 609; 19 Am. St. Rep. 63.)

The circumstance that plaintiffs filed exceptions to the executor's account is unimportant. If they were interested in the estate, the order of the court (made on due notice) concludes them, whether they contested the account or not; if they were not interested, they had no right to contest it, and the filing of exceptions could not give them an interest. The fact of such appearance may have been evidence bearing on the question whether they expected or agreed to look to the estate for their fees; a question settled, however, by the findings in the negative.

We are not insensible to the force of defendants' argument *ab inconvenienti;* it is said that if the representative pays the attorney in advance of settlement he may find that the court will consider the charge too great and refuse him credit for the payment—as happened in *Estate of Gasq,* 42 Cal. 288; while if he first obtains settlement of his account on his own estimate of what is a proper charge, the attorney may refuse to accept it, and sue him for a larger sum—as in the case here.    The supposed perils of the representative are more apparent than real; he will, we apprehend, commonly be able to procure competent counsel who will agree to render their services for such compensation as the court may allow to him for that purpose from the estate; it is seldom that the superior courts have been found niggardly in that particular.    (See the remarks of this court in *Estate of Byrne,* 122 Cal. 260.)    Again, the attorney is entitled in any event to only reasonable compensation; presumably, what is reasonable will appear to be the same before whatever competent tribunal the question arises; it will probably not often occur that the estimate of a jury in an action by the attorney against the representative will be higher than that of the court to which the account is rendered.

Defendants rely on *Estate of Couts,* 87 Cal. 480.    In that case an order, made on settlement of an account, determining that certain claims for services rendered to the executrix were legal charges against the estate, was held conclusive on the executrix and those interested in the estate; if there is anything in the opinion there which would justify the inference that persons not so interested might be compelled to litigate their claims against the executrix upon hearing of her account it is *dictum* merely.

3. It is claimed by respondents that the administrator of J. R. Breen is improperly joined as a defendant with James F. Breen. There were at common law valid formal reasons against such joinder, and they were allowed effect in two early cases in this state.    (*May v. Hanson,* 6 Cal. 642; *Humphreys v. Yale,* 5 Cal. 173.)    But section 379 of the Code of Civil Procedure provides that: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."    The language is certainly broad

enough to allow the joinder of the administrator of a deceased debtor or promisor with survivors who were jointly liable with him to the plaintiff; and such is the later doctrine of this court, to which we adhere. (*Lawrence v. Doolan,* 68 Cal. 309; compare *Bank of Stockton v. Howland,* 42 Cal. 129; *Fisher v. Hopkins,* 4 Wyo. 379; 62 Am. St. Rep. 38; Bliss on Code Pleading, sec. 107; Pomeroy on Remedies, secs. 302-304.) The objection of misjoinder must be overruled.

Defendants were liable for the whole value of the services of plaintiffs as found by the court; but it appears from the record and from the admissions in the briefs of plaintiffs that they have received on account of their demand the sum of twelve hundred and fifty dollars, paid from the funds of the estate subsequently to the commencement of the action. The judgment should, therefore, be reversed, with directions to the court below to render judgment for plaintiffs for the sum of five hundred and fifty dollars, the excess of the value of their services as found by the court above the payment aforesaid, with interest from date of the original judgment, and for costs; judgment to be against James F. Breen personally, and that the administrator of J. R. Breen pay in due course of administration.

Gray, C., and Pringle, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to the court below to render judgment for plaintiffs as in said opinion recommended.

Harrison, J., Garoutte, J., Van Dyke, J.

A petition for rehearing was denied March 31, 1899, Beatty, C. J., dissenting.

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing in this case, because I think an erroneous construction has been given to the contract of the parties and a precedent established which can never fail to work an injustice as often as it is followed.

When the defendants employed the plaintiffs to perform the necessary legal services incident to the administration of the estate of which they were executors, without any express agreement as to compensation, there was, of course, an implied agree-

ment to pay the reasonable value of the services. But if it can be justly inferred from the nature of the transaction that they had each in mind, and expected to be governed by, a particular rule or method of ascertaining such reasonable value, then that is as much a term of the contract as the agreement to pay. The contract of the defendants was like any other implied contract, and their promise such, and such only, as can be reasonably inferred from all the circumstances. If I order a sack of flour from a grocer, the promise which the law implies is that I will pay the reasonable value of the flour as determined by its current market price at the time and place of delivery, and this because market price is the generally accepted standard of value, and is, therefore, presumed to have been the thing intended and understood by buyer and seller. But suppose current market price not to be the accepted standard of value. Suppose, for instance, that some board or officer is invested by law with the power to ascertain and fix the value of provisions. In that case the only promise the law could imply from a simple order for the delivery of a sack of flour would be a promise to pay its value as determined by such board or officer. Now, to apply this illustration to the case in hand: When an executor, administrator, or other trustee employs an attorney to serve him in his representative capacity in the care and due administration of the subject of the trust, they both know that the services are to be rendered, not for the personal advantage of the trustee, but solely in the interest of the beneficiaries of the trust—not for the executor, but for the distributees of the estate. They both know that it is not just that for such services the trustee should pay out of his own pocket a sum in excess of that allowed by the court in the settlement of his accounts; and the attorney knows perfectly well that the trustee does not expect or intend to be held to a personal liability beyond the sum allowed by the court. They both know that the reasonable fees of the attorney are a charge upon the trust fund, because it is made the duty of the chancellor, or probate court, in settling the accounts of the trustee, to ascertain and allow such reasonable fee as a preferred claim. By express mandate of the statute (Code Civ. Proc., sec. 1616) it is made the duty of the probate court, in settling the account of an executor, to

allow—and necessarily to ascertain—his reasonable expenses in the care, management and settlement of the estate, including reasonable fees paid to attorneys for conducting the necessary proceedings or suits in court. The amount so ascertained is all that the executor can take out of the trust fund to reimburse himself, and, if he may be compelled by the attorney in another forum to pay a larger sum, he must lose the difference. Now, this being the law, known to the parties, and vitally affecting the relation upon which they are about to enter, the question to be determined is, What understanding is to be inferred—what promise implied—as to the rule and mode of ascertaining the attorney's compensation in the absence of an express agreement? To me it seems perfectly clear that the only reasonable inference is that the attorney expects to receive, and the executor expects to pay, only that reasonable compensation which the probate court in the settlement of the executor's account shall ascertain and allow, and if such is their understanding such necessarily is their contract.

Of, course, no attorney would be bound to accept the employment on those terms, but if he is unwilling to do so it is for him to insist upon an express agreement of a different character. The duty of having the agreement made express, if he intends to hold the executor to a personal liability for a sum in excess of the court's allowance, devolves upon him especially, because from the very nature of the transaction he must know that the executor cannot intend deliberately and advisedly to incur an indefinite and perhaps serious personal liability for the sole benefit of heirs and legatees.

It is no argument against this position to say that the executor cannot make the estate liable to the attorney, and that the allowance on account of the attorney's fees is made, not to the attorney himself, but to the executor. The question is not as to the power of the executor to subject the estate to a liability, but as to the extent and measure of his own liability. It is conceded in the opinion of the court, and is unquestionably true, that the executor can, by express stipulation, limit his liability to the amount allowed him out of the estate; and the only question we have to determine is, whether, in the absence of such express stipulation, the law will imply the same thing. The

question, in other words, is whether the law will adopt a presumption which in nine cases out of ten will correspond with the fact, or a presumption which in nine cases out of ten will be directly contrary to the fact.

Moreover, this proposition that the executor cannot subject the estate to a liability to the attorney, and that the allowance of attorney's fees is made to the executor and not to the attorney, in addition to being an utterly false quantity in the discussion here, is all the more deceptive because while it is formally and technically true it is substantially false. If it is the duty of the probate court to apply the funds of the estate to the payment of the fees of the attorneys employed by the executor, and if the fees allowed to the executor merely pass through his hands to the attorney, the proposition that the executor cannot subject the estate to the liability has nothing substantial to rest upon.

The decision in *Dwinelle v. Henriquez*, 1 Cal. 387, is not in conflict with the conclusions above stated. All that is there decided is, that by a general retainer the administrator of an estate incurs a personal liability. That, however, is not the question here. Concede the personal liability of the executors, the question still remains, How is the extent of that liability to be determined? My contention goes no further than this: That it is to be determined by the express stipulation of the parties, if it is express, and, if not express, by the tacit understanding which ought to be inferred from the nature of the transaction—an understanding, that is to say, that the attorney will claim no more than the probate court will allow; that he will not subject his own client to a loss and damage which he well knows he does not intend to incur.

The court, in noticing the *argumentum ab inconvenienti* urged by counsel for respondents, suggests that the hardships involved in the rule here announced are more apparent than real, because, they say, the executor or administrator will commonly be able to procure counsel of ability who will agree to render their services for such compensation as the court will allow from the estate. This is undoubtedly true. I have no doubt that counsel of ability do commonly render their services for the amount which the court allows, and that without any ex-

press agreement, and without any idea that in accepting such allowance they are doing more or less than they and their client understood they would do, though nothing was said on the subject. The suggestion of the court, however, does not meet the real difficulty. The executor, or administrator, though he can protect himself against a personal liability by an express agreement, will rarely think of doing so, simply because he will not be aware of the necessity of making an express agreement until it is too late.

Besides the injustice to individuals which must occasionally result from the rule of this case, a more serious mischief is involved. Henceforth every executor or administrator who is not protected against a personal liability beyond the amount allowed for attorneys' fees in the probate court, will be compelled, in order to avoid risk of loss to himself, to urge a large and liberal allowance, for fear that in another forum a still higher estimate may be pleaded upon his attorney's services, for which he will be answerable. Instead of being free to protect the estate against an exorbitant demand, he will have an interest in sustaining it. Considerations of public policy, therefore, no less than of justice, require the construction of this contract for which the respondents contend.

I think the judgment of the superior court should have been affirmed.