[S. F. No. 1667. Department Two.—August 14, 1900.]

DRURY MELONE, Respondent, v. KATE S. RUFFINO, Executrix, etc., Appellant.

PLEADING — NEGATIVE ALLEGATION—NONPAYMENT OF DEBT—BURDEN OF PROOF—SUPPORT OF FINDING.—Negative allegations in a pleading need not be proved, unless they constitute an essential part of the original substantive cause of action. The allegation of nonpayment of a debt sued upon, though necessary to make the complaint perfect, need not be proved; but the burden of proof of payment is upon the defendant. Where the debt sued upon is proved within the statute of limitations, in the absence of proof of payment, a finding of the nonpayment alleged is sufficiently sustained.

AUTHORIZATION FOR SALE OF LAND — CERTAINTY OF DESCRIPTION — ABBREVIATIONS—REFERENCE TO ATTACHED DIAGRAM.—The use of abbreviations in the description of land contained in an authorization for its sale by real estate agents does not render the authorization void for uncertainty, where the abbreviations are intelligible and easily understood by the aid of a diagram attached to the document.

ID.—VARIANCE—DESCRIPTION IN INDORSED RECEIPT—UNDERSTANDING OF PARTIES—ACTION FOR RETURN OF DEPOSIT.—A variance between the description in the authorization and that contained in the printed receipt indorsed on the back thereof is not fatal, where both

refer to the attached diagram, and it is clear that all parties
had reference to the same property. Where it was plainly
agreed that if the title was not made good, the deposit made
with the agents by the proposed purchaser should be returned to
him, such variance will not affect an action to enforce the re-
turn of the deposit for failure of the owners to make the title
good.

ID.—SALE AUTHORIZED BY ADMINISTRATOR—EVIDENCE—REPRESENTATIVE
CAPACITY—HARMLESS ERROR.—Where a sale was authorized by an
administrator to be negotiated by real estate agents, in an action
by a proposed purchaser to recover back the money deposited
by him with such agents, evidence is admissible for the defend-
ant to show that he was acting in his representative capacity,
and that all parties so understood the fact to be; but error in
excluding such evidence is harmless, where it subsequently ap-
pears in proof that he acted in his capacity as administrator of
the estate, and was endeavoring to dispose of some of its prop-
erty for the benefit of himself and other heirs.

ID.—PERSONAL LIABILITY OF ADMINISTRATOR — DESCRIPTIO PERSONÆ.—
One who, in authorizing a sale of real estate, uses the first person
in the body of the instrument, in fitting words to bind himself
personally thereby, to which he appends his name, followed by
the designation of himself as administrator of the estate of a
deceased person named, is personally liable upon the contract,
notwithstanding the description of his person and representative
capacity so appended to his signature.

ID.—VALIDITY OF CONTRACT—LIABILITY FOR DEPOSIT.—There is nothing
unlawful in an administrator binding himself personally by a
contract to sell the property of the estate in good faith for the
benefit of himself and other heirs; and though he may not be
able to make a title by the decree of the court within the time
limited, he may bind himself personally by a valid agreement
for the return of the deposit made by his authority.

ID.—CREATION OF AGENCY—LIABILITY OF PRINCIPAL.—Where there was
no provision in the written terms of the authorization to the
real estate agents for a sale on their own account, or for com-
pensation of any price obtained over a fixed sum, an agency is
thereby created, and the principal is bound by the contract made
by the agents under such authorization for a return of a deposit
made by a proposed purchaser, in case of failure of the principal
to make title, as agreed.

ID.—STATUTE OF LIMITATIONS — ACTION TO RECOVER DEPOSIT—WRITTEN
CONTRACT.—The written contract being valid and personally bind-
ing upon the administrator, an action to recover the deposit
agreed by its terms to be returned in case of failure to make
title as agreed is not based upon an implied contract, nor af-
fected by the two years' statute of limitations, and is not barred
until the lapse of four years from the accrual of the cause of
action.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    James M. Troutt, Judge.

The facts are stated in the opinion of the court.

George C. Sargent, for Appellant.

O'Brien, O'Brien & O'Brien, and Andrew G. Maguire, for Respondent.

THE COURT.—Action on a contract, entered into by defendant's testator and plaintiff's assignor for the sale of land by the former to the latter, to recover the deposit made by plaintiff on account of the purchase.    Plaintiff had judgment for the amount of deposit, to wit, nine hundred and twenty-two dollars and fifty cents, being ten per cent of the purchase price of the land, and also for interest thereon from June 10, 1893, amounting in all to twelve hundred and thirty-six dollars and eighty cents, and for costs.    Defendant appeals from the judgment on bill of exceptions.    The contracts, the subject of the action, read as follows:

"San Francisco, May 19, 1892.

"I hereby authorize . . . . Joost, Mertens & Company to sell . . . . for me at any time within thirty days from the date hereof, and thereafter until this authority is revoked by me in writing, for the sum of nine thousand net dollars . . . . or any less sum that I may accept for said property, that certain real property in the city and county of San Francisco [here follows description, 'being a portion of Mission Block No. 83']. And I further authorize and empower said Joost, Mertens & Company, in case of sale . . . . to accept, as my agents, a deposit of ten per cent on the selling price as part payment thereof, and to execute to the purchaser, in my behalf and as my agents, a valid contract of sale of said property upon such reasonable terms as to examination of title and consummation of the sale as are equitable, usual, and customary, and as appear more particularly in their form of 'contract receipt' printed on the back hereof, which I hereby approve and ratify.    I further agree to furnish free of charge, for examination of title, such abstract of the property as I may have at the time the same is

sold. This authorization is irrevocable during the term of this contract.                               L. J. RUFFINO,

"Administrator of the Estate of Petrona Ruffino, Deceased."

Pursuant to this authorization, Joost, Mertens & Co. made a sale to one Walker, plaintiff's assignor, and a deposit of ten per cent of the price named (nine thousand two hundred and twenty-five dollars) was made June 10, 1892, by plaintiff with Ruffino's said agents. A contract receipt in the form referred to in the authorization was signed as follows: "L. J. Ruffino *et al.* [Seal] By Joost, Mertens & Company, [Seal] Agents. W. D. Walker. [Seal]" This receipt recited that the deposit was on account of the purchase price of the property (describing it). "Fifteen days are allowed to examine title and consummate sale. At the termination of the aforesaid time the balance of said purchase money is due and payable upon tender of the deed of the property sold; if the title is found defective, the purchaser is to state his objections to their title in writing, and the seller is to perfect the title within thirty days after the expiration of the time first allowed for examination or any extension thereof, unless the title cannot be perfected within said thirty days, in which event the same shall be perfected within a reasonable time thereafter. . . . . If the sale is not consummated according to the foregoing conditions, the deposit is to be forfeited. . . . . If the title cannot be perfected within the above-mentioned times, the deposit is to be returned. . . . . The said W. D. Walker and L. J. Ruffino *et al.* hereby agree to comply with the conditions of this contract"; signed as above stated. L. J. Ruffino, at the time he signed the authorization, was administrator of the estate of Petrona C. de Ruffino, and so continued to be until June 27, 1895, when he died, leaving a will naming defendant as the executrix thereof, and she duly qualified August 18, 1897; Petrona was the mother of L. J. Ruffino, and he and his sisters were heirs to her estate. Mr. Mertens, one of the firm of Joost, Mertens & Co., testified that L. J. signed the contract in his own office, in San Francisco, in the presence of Mertens, on the day of its date.

1. The court found that Ruffino had "failed . . . . to return said deposit or any part thereof; and no part thereof has been repaid or paid to the said plaintiff or his assignor." The

complaint alleges failure and refusal by Ruffino "to return said deposit or any part thereof, although often requested so to do." The answer denies these allegations, and the finding of the court is challenged for insufficient evidence to support it.

It is not necessary to determine whether the evidence was sufficient to warrant the finding of nonpayment—if proof of nonpayment by plaintiff had been necessary. Where a plaintiff has proved the existence of a debt sued on—at least, within the period of statutory limitation—the burden of proving payment is on the defendant. That this is the rule at common law no one can doubt; and we have no statutory law changing it. Greenleaf states it as follows: "The defense of payment may be made under the general issue, in *assumpsit;* but, in an action for debt on a specialty or on a record, it must be specially pleaded. In either case the burden of proof is on the defendant, who must prove the payment of money, or something accepted in its stead, made to the plaintiff, or to some person authorized in his behalf to receive it." In Cowen & Hill's Notes to Phillips on Evidence, volume 1, side page 810, the authors, quoting from an authority and citing others, give the rule in this language: "The principle that he who alleges himself to be the creditor of another is obliged to prove the fact of agreement upon which his claim is founded, when it is contested; and that, on the other hand, when the obligation is proved, the debtor who alleges that he has discharged it is obliged to prove the payment, is clearly one of those propositions in which every system of jurisprudence must concur in general, whatever particular rules may be adopted, as to the mode and form of the allegations, by which the necessity of such proof is to be determined." The same rule has been recognized and declared frequently in this state. In *Caulfield v. Sanders,* 17 Cal. 569, the suit was upon an indebtedness alleged to be due from the defendant, who was an attorney at law. He averred in his answer that the principal part of the alleged indebtedness was due from his clients and not from him personally, and that the part for which he was personally liable had been paid. Field, C. J., delivering the opinion of the court, said: "This is in substance a denial of indebtedness for a portion of the account, and a plea of payment for the bal-

ance.  It is, in effect, an admission as to that balance of an
original liability, and throws the burden of establishing the pay-
ment upon the defendant."  Further on he says: "The issue
thus formed cast upon the plaintiff the necessity of separating
the different charges, and of establishing a liability as to those
items which were incurred for clients of the defendant, and cast
upon the defendant the necessity of proving a payment of the
balance."

In *Lisman v. Early,* 15 Cal. 199, the suit was on a note, and
the answer pleaded payment.  As proof of his defense defend-
ant offered in evidence some receipts from the plaintiff.  Plain-
tiff offered rebutting evidence tending to show that these re-
ceipts were for payments on an open account, and not on the
note.  The defendant then proposed to show that there was
no such account in existence, and to this offered evidence an
objection by plaintiff was sustained.  The appellate court re-
versed the judgment and said: "The burden of proof was really
on the defendant to prove payment under the issue, and the
defendants were entitled to close the proofs, at least, to rebut
any new matter set up by the plaintiff."  (Citing authorities.)
In *Still v. Saunders,* 8 Cal. 281, the court said: "It appears
that John W. Still was indebted to another person, and that
it was agreed between him and defendant Saunders that the
latter should pay this debt, and that this payment should con-
stitute a portion of the purchase money.  It lay upon the de-
fendant to show when and how this debt was made."

Of course, it has been held by this court, as it was always
held at common law, that in a complaint upon a promissory
note, or other obligation to pay money, there must be an aver-
ment that the money had not been paid.  This is necessary to
make the complaint perfect upon its face.  But it is a *non
sequitur* to say that because such negative averment is neces-
sary in the complaint therefore it is necessary for the plaintiff
to prove it.  The question is not one of pleading, but of evi-
dence; not what must be alleged, but where the burden of proof
lies.  The general rule is that a party is not called upon to
prove his negative averments, although they may be necessary
to his pleading.  See rules of pleading set forth and approved
by Field, C. J., Baldwin, J., concurring, in *Green v. Palmer,* 15

Cal. 412,[1] in which, among other things, it is said: "Each party must allege every fact which he is required to prove, and will be precluded from proving any fact not alleged and he must allege nothing affirmatively which he is not required to prove. Negative allegations however, are frequently necessary, though they are not to be proved." A negative allegation is to be proved only where it constitutes a part of the original substantive cause of action upon which the plaintiff relies, and this is an exception to the general rule. As, for instance, in an action for malicious prosecution the plaintiff must both allege and prove want of probable cause, for the latter, although in the nature of a negative averment, is a necessary ingredient in the cause of action itself; and another instance is where the cause of action consists in the failure of the defendant to do certain work in a workmanlike manner; that the very gist of the cause of action is the allegation that the work, although done, was not done in a proper manner.

The cases cited from this court as tending to overthrow the common-law rule nearly all deal with a question of pleading, and not with a question of evidence. In two or three of them it is said that in a suit upon a promissory note the production of the note is sufficient proof of nonpayment; but this remark, no doubt, incidentally grew out of the fact that in a suit upon a negotiable promissory note the note itself must be produced, or its absence satisfactorily accounted for, in order to protect the defendant against such a wandering thing as a negotiable instrument. The only case that can be considered at all in point as establishing the opposite doctrine is that of *Farmers' etc. Bank v. Christensen*, 51 Cal. 571; but the language relied on occurs in a short opinion of less than a dozen lines, is fortified by no citation of authority, and is entirely *obiter dictum*. In that case the suit was upon a promissory note and mortgage. In the answer it was denied that any part of the note remained unpaid, and it was averred that it had been paid by a conveyance of the mortgaged land to the plaintiff. That being the condition of the case, the plaintiff moved for a judgment on the pleadings, and judgment was so entered. Of course, the judgment was properly reversed, because the answer raised is-

[1] 76 Am. Dec. 492.

sues upon which the defendant was entitled to introduce evidence. All that was involved in the case was disposed of in the last sentence of the opinion, which is as follows: "This denial and averment were sufficient to raise issues of fact, and the court below erred in rendering judgment for the plaintiff upon the pleadings." The statement in the former part of the short opinion that "this denial, of itself, cast the onus upon plaintiff to prove the nonpayment by production of the note or otherwise," was entirely outside of any questions legitimately before the court.

2. When the authorization and the contract receipt were offered in evidence defendant objected: 1. To the authorization, that it was void for uncertainty; that it does not describe any property, and by reason of the abbreviations used is unintelligible; 2. To the receipt, that it was not executed in the name of the person who gave the authority; that it described a different piece of property; that there was a substantial variance between the two; that the authority is a joint one and should have been executed by both partners, and that there is no proof of delivery. Upon the question of delivery we think the evidence was sufficient; it has in part already been stated.

As to the abbreviations used in the authorization we think them intelligible and their meaning readily understood. For example, the description reads: "Com at a pt on the W. line of Dolores st. dist 41 ft 2¾ in. from the N. line of 16th st and rung th in a W. direction 188 ft 2⅝ in to a pt· dist 28 ft 4⅞ in. from the N. line of Dolores St. and run. th. at r. a. on the W. line," etc. Anyone familiar with land descriptions and abbreviations used in describing land would have no difficulty in supplying the terms intended by the abbreviations, especially so by the aid of the diagram attached to the document. As to the objection of uncertainty in the description of the land referred to in the authorization, and the alleged variance between the description therein and that in the receipt, there is some ground for the objection. It appears, however, that the contract and receipt were written upon a printed form used by Joost, Mertens & Co. and constituted one instrument, the receipt being printed on the back of the authorization, and its form approved in the body of the authorization. There was

attached to the paper a diagram, referred to in the receipt. Notwithstanding the variance in the description between the two it is sufficiently clear that all parties had reference to the same property, and in any case the authority given to Joost, Mertens & Co. to receive the deposit on behalf of Ruffino is plain enough, and the agreement that it should be returned on failure to make title is also plain enough. Unless the agreement was such a one as could not be enforced for other reasons, we do not think it should be avoided on the grounds of the objections above noticed.

3. Counsel for defendant asked the witness Mertens the following question: "What conversation, if any, took place between you and Mr. Ruffino, in regard to placing that property in your hands for sale?" Objection was made that the conversation is all incorporated in the contract, and was sustained. Counsel stated that he wished to prove "that it was made known to Mr. Mertens at that time that this was the property of the estate of Petrona C. de Ruffino, and that Mr. Ruffino, on behalf of the other heirs, wished to sell it, and that he acted as administrator in making this sale."

Defendant's question should have been more specific, but the scope of the objection and the subsequent offer and ruling thereon entitle defendant to be heard upon the exception. We think the case of *Southern Pac. Co. v. Von Schmidt Dredge Co.,* 118 Cal. 368, clearly demonstrates that defendant was entitled to show by evidence that he was acting in his representative capacity, and that all parties so understood the fact to be.

It is not necessary to consider the question, so elaborately discussed in the briefs, as to when parol evidence is admissible to explain the capacity in which a party enters into an engagement, or as to whether he was acting as agent for a known principal. Later on in the trial the facts came out so far as defendant sought to obtain them by her question and offer, and it appeared that her testate was acting in his capacity of administrator of the estate which he represented, and was endeavoring to dispose of some of its property for the benefit of himself and other heirs. Defendant was not injured by the ruling, if we concede that it was wrong, and we may dismiss this branch of the case.

4. Appellant claims that Ruffino's contract was without authority, and for that reason it is contended that no action can be maintained upon it. (Citing *Hall v. Crandall,* 29 Cal. 568[2]; *Lander v. Castro,* 43 Cal. 497; *Blanchard v. Kaull,* 44 Cal. 440; *Wallace v. Bentley,* 77 Cal. 19[3]; *Senter v. Monroe,* 77 Cal. 347.) It is claimed that these cases overrule *Conner v. Clark,* 12 Cal. 168,[4] on which respondent relies. In this last case Conner sued Clark on a promissory note signed "R. C. Clark, trustee," and defendant offered evidence to show that he was not to pay individually, but was to pay out of a particular fund, and, of course, not to pay at all if the fund failed. The evidence was rejected at the trial and the ruling was approved here on appeal, and Clark was held personally liable. It did not appear that he had any authority to bind the beneficiaries in the trust, or that anyone beside Clark was bound by the contract. In the opinion, Story on Promissory Notes, section 63, is quoted approvingly where the doctrine is laid down that fiduciaries "acting *en autre droit* are by law generally held personally liable on promissory notes, because they have no authority to bind, *ex directo,* the persons for whom, or for whose benefit, or for whose estate, they act; and hence to give any validity to the note they must be deemed personally bound as makers."

Appellant relies on *Hall v. Crandall, supra.* In that case the body of the instrument sued upon read: "Eight months after date, for value received, the Auburn Turnpike Company promise to pay Hall & Allen," etc., signed "J. R. Crandall, president; E. M. Branard, secretary." The court had in a previous case, *Hall v. Crandall,* 27 Cal. 255,[5] held that the note was not binding upon the company. The second action was against the directors individually, and was brought upon the note itself and not upon the wrong done to the plaintiffs by the defendants in executing it without authority, and the court said: "In all such cases the remedy against the agent is an action to recover the money, if any has been paid him, or the value of the work or labor, if any has been performed for him under the supposed contract, or special damages resulting to the plaintiff by reason of the defendant's wrong in undertaking to act for another

[2] 89 Am. Dec. 64.          [4] 73 Am. Dec. 529.
[3] 11 Am. St. Rep. 231.     [5] 87 Am. Dec. 75.

without authority." After stating this general principle the
court adds: "If an agent in executing a contract employ terms
which, in legal effect, charge himself, he may be sued upon the
instrument itself as a contracting party. This is so because by
the use of such terms he has made the contract his own." The
opinion then proceeds to point out that from the terms em-
ployed the contract sued upon in that particular case "is mani-
festly the contract of the company and not the defendants. It
is clear upon inspection of the instrument that the defendants
intended to bind the company and not themselves, and that the
plaintiff so understood it." *Hall v. Crandall, supra,* was fol-
lowed in *Lander v. Castro, supra,* and *Blanchard v. Kaull, su-
pra,* and for the reason that the notes sued upon did not pur-
port to be the notes of the persons sued. And so in the cases
cited from 77 California, *supra,* where it was held that "the
defendants are not liable unless the contract contains apt words
to charge them personally." The distinction between these
cases and *Conner v. Clark, supra,* lies in the legal effect of the
different terms used in the respective contracts. *Conner v.
Clark, supra,* was not overruled by *Hall v. Crandall, supra;* on
the contrary, the principle on which that case was decided is
expressly recognized in *Hall v. Crandall, supra.*

5. Appellant claims that the authorization executed by Ruf-
fino, even if personal, is void on its face and cannot be enforced.
(Citing *Danielwitz v. Sheppard,* 62 Cal. 339; *Jones v. Hanna,*
81 Cal. 507.)

In each of these cases the action was by the agent to recover
a commission on a contract forbidden by law, which if enforced
would have resulted in direct injury to the estate. The con-
tract before us contains no such conditions. It is true that
the administrator may not have been able to make a title by
the decree of the court within the time stipulated, or at all,
but there was nothing unlawful in his agreeing in good faith
in his individual capacity to do so, nor was there anything un-
lawful in his receiving a deposit on the agreement. We are un-
able to see why Ruffino did not become personally liable for
the deposit made by his authority. (*Maxon v. Jones,* 128 Cal.
77.)

6. Appellant claims that Joost, Mertens & Co. were the ven-

dors, and that the action should have been brought against them. (Citing *Robinson v. Easton, Eldridge & Co.,* 93 Cal. 80.[6]) In that case the plaintiffs signed a contract authorizing defendants to sell for plaintiffs certain real property. The contract contained the following clause: "And we will pay said Easton & Eldridge a commission of all over said sum of ten thousand dollars net, for which they may sell said property with our consent." A conditional sale was made by defendants and they received a deposit on account of the purchase, but, the conditions failing, they returned the money to the purchaser. Plaintiffs sued to recover this deposit on the theory that defendants received it as agents of plaintiffs, and that it was their money in defendants' hands the moment it was received. The court held that the relation of agency was not created by the contract, but rather that of vendor and purchaser, and that the sale by defendants was on their own account. There was evidence in the present case that the clause in the authorization relating to the payment of commissions was erased, and, in lieu thereof, it was orally agreed between Joost, Mertens & Co. and Ruffino that the former "should have all they could get above nine thousand dollars." If this clause had been inserted in the contract, and this were an action by Ruffino's representative to recover the deposit from Joost, Mertens & Co., there would be some analogy in the cases. But this is an action brought to recover from Ruffino's representative on the theory that he received the money and did not return it when he failed to make the title.

7. The statute of limitations (Code Civ. Proc., sec. 339, subd. 1) is pleaded, and it is claimed that the action is barred by that section. This contention is upon the assumption that the contract was void and whatever liability attaches is upon an implied contract and was barred after two years. But as we have held that the liability arises on the contract, and not by implication, the claim is not barred. It is not now contended that it is barred by any other statute.

The judgment is affirmed.

Hearing in Bank denied.