SUSAN J. LORD ET AL. v. ISAAC GRAVESON ET AL.

1. PROOF OF PAYMENT MUST BE SPECIALLY PLEADED IN ACTION UNDER SEC. 5086 REV. STAT.

In an action upon an account under Sec. 5086 Rev. Stat., although it is necessary to aver nonpayment of the debt in order to show a breach of the contract, yet proof of the same is not required, and, in order to prove payment, the debtor must specially plead it.

2. PAYMENT FROM PROCEEDS OF NOTE UPON ACCOUNT WITH MAKER FINAL PAYMENT, WHEN.

An exchange of notes without any limitation upon the use of the same vests the title thereto in the holder, and when discounted the proceeds may be applied as the holder directs, and should he pay any of such proceeds to the maker upon an account with him, or upon notes given in settlement of the account, it would constitute a final payment on account, although the holder failed to pay his own notes given in exchange therefor when due.

**J. C. Healy** and **C. W. Baker,** for plaintiffs in error.

**Stephens, Lincoln & Stephens,** for defendants in error.

**GIFFEN, J.**

This was an action upon an account under Sec. 5086 Rev. Stat. in which the plaintiffs in error filed a general denial. Two alleged errors may be considered together:

First. That the court erred in charging the jury that payment is an affirmative defense, and the burden of proof is on the defendants.

Second. That the court erred in refusing to allow the defendants to cross-examine the plaintiff upon the question of payment.

The argument is that the averment of a certain amount due upon an account, and that there are no credits thereon, include the averment that the account is unpaid, and that, therefore, under a general denial, evidence of payment should be received.

In the case of Lent v. Railway, 130 N. Y. 504 [29 N. E. Rep. 988], the syllabus contains this proposition:

"In an action upon an alleged indebtedness an allegation in the complaint of nonpayment is essential. This is not affected by the rule that payment must be pleaded as an affirmative defense, and cannot be proved under the general issue, but the rule simply modifies the general

rule of pleading so that the averment of payment is not put in issue by a general denial.''

In the case of Melone v. Ruffino, 62 Pac. Rep. 93 [129 Cal. 514; 79 Am. St. Rep. 127], the supreme court of California held:

''Where plaintiff has proved the existence of the debt sued on the *onus* is on defendant to prove that it has been paid.''

Judge Swan, in his work on ''Pleading and Precedents,'' page 246, says:

''Under the general issue at common law, any facts tending to show that, when the action was brought, the plaintiff had no subsisting cause of action, might be introduced in evidence—such as payment, release, accord and satisfaction, etc.; whereas, under the code, the facts themselves, and all the facts alleged in the petition are controverted by the general denial; and if, notwithstanding the existence of those facts, something transpires afterwards which avoids or discharges the cause of action alleged in the petition, then a general denial is not only false, but such facts cannot be given in evidence under it.''

On page 188 he says that an allegation that a specific sum on an account or note is due includes the allegation that the claim is a subsisting, existing debt, and is unpaid. It would seem, therefore, from these authorities that while it is necessary to aver nonpayment of the debt in order to show a breach of the contract, yet proof of the same is not required, and that in order to prove payment it must be specially pleaded. At all events, the plaintiffs in error were not prejudiced for the reason that on January 23, 1901, they filed an additional answer in which they set up payment by their codefendant, John Carlisle, and afterwards they had abundant opportunity and did cross-examine the plaintiff upon the subject of payment.

The giving of charge No. 12, requested by the plaintiff and excepted to by the plaintiffs in error, is another ground of error, and is as follows:

''If the jury believe that some part of the plaintiff's claim for work and labor was paid in cash by John Carlisle, but that at the time of such payments John Carlisle was indebted to the plaintiff for money or notes which said Carlisle had discounted in a sum as great or greater that the amount of such payments, *and* if the jury believe that said Carlisle received as much cash and notes from Graveson for the purpose of meeting his notes to Graveson given on account of the contract as he gave him cash and paid notes on account of the contract, or if the jury believe that Carlisle received from Graveson as much or more cash and notes between the date of his contract and the date of Carlisle's agreement as he gave

Lord v. Graveson.

Graveson during said time in cash or notes which were paid, *and* the jury is unable from the preponderance of the testimony to say how many and which of the notes and items of cash on either side are connected with the contract, then the defendants are not entitled to any credit on the account for work and labor sued for in this action.''

It is claimed by counsel that this charge contains three distinct propositions, neither of which is sound. But we think that a fair construction limits it to two. The first five lines assume that payments were made by John Carlisle, but that if he was indebted to plaintiff for money and notes in a sum as great or greater than the amount of such payments, the defendants would not be entitled to any credit on the account. Standing alone, this would be clearly erroneous. Payment itself implies a discharge of the debt, and it is immaterial that the defendant at the same time was owing the plaintiff an equal or greater amount upon other obligations. But the next four lines of the charge were intended to qualify this statement, by showing that Carlisle received as much cash and notes from Graveson for the purpose of meeting his notes to Graveson given on account of the contract as he gave him cash and paid notes on account of the contract. The defect in this qualification consists in not limiting it to the time of any particular payment and embracing all the transactions pertaining to the account. If, when a note given in settlement of the account became due and was renewed for a sum less than the original amount and the difference was paid by Carlisle out of his own funds, it constituted a payment to that extent, notwithstanding a subsequent renewal note was given for the original amount. For example, when the note for $1,800 became due— September 19, 1891—it was renewed by giving two notes of $875 each, the difference of $50 being paid by John Carlisle. This was a final payment of that sum, although in renewing either of the $875 notes it may have been increased by that amount or more. There are many such transactions shown in the record, as Carlisle and Graveson were exchanging accommodation notes, not only during the life of this contract but for some time prior thereto. It was, therefore, prejudicial error in giving the first proposition contained in this charge, although no objection can be found to the last one.

A like error occurred in the general charge at page 812 of the bill of exceptions, to wit:

''Nor is the mere passing of the actual money by John Carlisle to Graveson, and it credited on the account, absolute payment, if John Carlisle by some note or other paper got some money or the same amount and subsequently never paid such note or obligation except by renewal. If,

however, when John Carlisle gave Graveson money or a note, and Graveson accepted the money or note as payment or satisfaction, or Graveson then gave his note or obligation as a separate or independent loan, looking solely to the note or obligation for payment, the same would be a payment and extinguishment of the debt.''

If money was given by Carlisle to Graveson and credited on the account, the fact alone that Carlisle owed Graveson upon some other obligation did not destroy the credit as a final payment.

The record discloses that when notes were renewed by Carlisle, there was an exchange of notes, Graveson giving to Carlisle notes for the same amount. It is claimed that when this was done, Carlisle was entitled to use the note received by him as he might see fit, unless at the time some restriction was imposed. An exchange of notes without any limitation upon the use of the same, vests the title to the respective notes in the holder, one being the consideration for the other, and when discounted the proceeds can be applied as the holder may direct. If Carlisle paid any of such proceeds to Graveson upon the account, or upon the notes given in settlement of the account, it constituted a final payment on account, although Carlisle failed to pay his note when due.

Counsel for defendants in error direct our attention to entries in Carlisle's books, showing that certain notes were given expressly to take up or renew other notes given in settlement of the account, but there are many other entries which fail to show for what pupose the exchange of notes was made except for mutual accommodation. No error of law is predicated on this view of the case, but that the verdict is against the weight of the evidence.

At page 636 of the bill of exceptions, the plaintiff was asked:

"What was said between you and John Carlisle at any time, when you received a note from him, any of these notes that you have testified to?

"A. There was not anything said at all. If they were paid the understanding was we would credit him with the amount. No agreement about it."

If, therefore, nothing was said at the time, and no understanding was otherwise had as to the use of the notes, then Carlisle could use the proceeds as he wished, even in payment of notes given to Graveson.

The trial court reduced the verdict of the jury by the sum of $805.59, which counsel for defendants in error claim embraces four items, making in all $809.59. Upon the same theory that justifies the allowance of these items, we think the verdict should have been reduced by the items of $100,

$67, two of $50 each, $170, and $136.   To this extent, the verdict was manifestly against the weight of the evidence, and the court erred in giving special instruction No. 12.

The judgment will therefore be reversed and the cause remanded for a new trial.

**Swing** and **Jelke, JJ.,** concur.

---

### BURGLARY—CRIMINAL LAW.

[Pickaway (4th) Circuit Court, November Term, 1902.]

Sibley, Cherrington and Jones, JJ.

*EDWARD BAILEY V. STATE OF OHIO.

"BUILDING" WITHIN MEANING OF SEC. 6835 REV. STAT. MUST HAVE PERMANCY OF STRUCTURE.

A "building" within the meaning of Sec. 6835 Rev. Stat., defining the crime of burglary, must have some permanency of structure; hence, a chicken coop, 37¾ by 38 inches, which might be carried from place to place, is not a "building," the entering of which with intent to steal would constitute burglary.

ERROR to Pickaway common pleas court.

**Chris. A. Weldon,** for plaintiff in error, cited:

State v. Schuchmann, 133 Mo. 111 [33 S. W. Rep. 35]; State v. Green, 6 N. J. Law 123; Hall v. State, 20 Ohio 7; Denbow v. State, 18 Ohio 11; Shultz v. Cambridge, 38 Ohio St. 659; White v. Woodward, 44 Ohio St. 347 [7 N. E. Rep. 446]; Bishop, Cr. Law Sec. 98; Williamson v. State, 44 S. W. Rep. 1107 [39 Tex. Cr. App. 60]; Woodworth v. State, 26 Ohio St. 196, 198; Thalls v. State, 21 O. S. 233; Cline v. State, 43 O. S. 332 [1 N. E. Rep. 22]; Weybright v. Fleming, 40 O. S. 52; Adams v. State, 31 Ohio St. 462; Morehead v. State, 34 Ohio St. 212.

**Irvin F. Snyder,** for defendant in error.

**CHERRINGTON, J.**

This is a proceeding in error.   Bailey was tried on the charge of burglary and found guilty, and the case is now here to reverse the judgment of the common pleas court in entering up sentence and judgment on the verdict of guilty rendered by the jury.

The burglary with which he was charged was in burglariously entering a building, viz., a chicken house, the property of one Jefferson

---

*Affirmed, without report, State v. Bailey, 69 Ohio St. 551.