[L. A. No. 17567.   In Bank.   Feb. 2, 1942.]

Estate of PAUL N. BOGGS, Deceased.   JOSEPH I. KING, et al., as Executors, etc., Appellants, v. ELIZABETH B. BOGGS, as Executrix, etc., Respondent.

Joseph I. King for Appellants.

Brooks Gifford and L. M. Reed for Respondent.

CURTIS, J.—This is an appeal from an order of the superior court sitting in probate settling the first account current of the executrix of the last will and testament of Paul N. Boggs, deceased.

The facts essential to a clear understanding of the points presented here for determination are briefly as follows:

With money borrowed from the Farmers and Merchants National Bank of Los Angeles Paul N. Boggs, on August 21, 1928, purchased through the bank 254 shares of National Supply Company preferred stock. By direction of Mr. Boggs these certificates were transferred to the name of his daughter, Elizabeth B. Boggs, and she signed a collateral agreement pledging this stock with the bank as security for the loan to her father. On March 7, 1929, the same bank bought 500 shares of Union Oil Associates stock for the account of Mr. Boggs, who gave the bank his note for $24,362.50 to cover the purchase price. On March 31, 1929, 200 shares of the National Supply Company preferred stock held by the bank and standing in the name of Elizabeth B. Boggs were called, and Mr. Boggs requested the bank to apply the proceeds against the purchase of the 500 shares of Union Oil Associates stock and to have the certificates for the latter stock transferred to the name of his daughter. This was done, and Miss Boggs again signed a collateral pledge agreement covering the stock so transferred to her name.

About February 15, 1933, Paul N. Boggs resigned his position as vice-president of the Union Oil Company of California. On February 17, 1933, he transferred to his daughter $7,283.24, and a few months later he transferred to her 460 shares of stock of the Union Oil Company of California and an additional $3,700 in cash. Thereafter he transferred to

her his equity in a piece of real property located at 1010 Selby Avenue, Los Angeles, and he permitted her to receive and retain as her own the rents from a piece of property located at 674 South New Hampshire Street, Los Angeles, and also from premises at 1015 North Roxbury Drive, Beverly Hills. On October 1, 1936, and just prior to his death, Paul N. Boggs leased this last-named piece of property for the term of one year at a monthly rental of $320, and he assigned the lease to the Farmers and Merchants National Bank as security for its loans to him. The bank also held a trust deed covering this property. As it undoubtedly had the right to do under the assignment of the one-year lease, the bank collected the rent, $125 of which it applied in reduction of Mr. Boggs' indebtedness and the balance, or $195, it paid to respondent for furniture she owned at the premises so leased.

Among Paul N. Boggs' creditors was Sarah Louise Clark, appellants' testatrix, to whom Mr. Boggs owed $35,000 on a note secured by a mortgage on the property located at 674 South New Hampshire Street, and also $8,500 on an unsecured promissory note. In April, 1934, Mrs. Clark accepted a deed to this mortgaged property in satisfaction of the $35,000 note, but Mr. Boggs still owed her $8,500, plus interest from August 5, 1933, on the unsecured promissory note. Mrs. Clark died on September 8, 1934. In February, 1935, the executors of her will brought an action against Paul N. Boggs on the unsecured promissory note, and on June 18, 1936, they obtained a judgment against him for $10,180.25, plus interest. Prior to the rendition of this judgment said executors commenced an action against Paul N. Boggs and his daughter, Elizabeth B. Boggs, attacking the aforementioned transfers made by him to his daughter after February 15, 1933, as fraudulent and void, all of such transfers having been made, so the executors claimed, at a time when Mr. Boggs was insolvent. Mr. Boggs died on October 20, 1936, a few days before this latter action was scheduled to go to trial. Elizabeth B. Boggs qualified as executrix of her father's will, and thereafter she filed her first account current, to which the executors of Mrs. Clark's will, appellants herein, filed objections.

In ordering the account approved the probate judge made the following findings: That Paul N. Boggs was solvent at all times at which the questioned transfers were made by him to his daughter, Elizabeth B. Boggs; that there was an

agreement between Elizabeth B. Boggs and her father to the effect that he should transfer to her such property as might come into his hands in consideration of her signing the collateral agreements with the Farmers and Merchants National Bank, pledging the National Supply Company preferred stock and the Union Oil Associates stock as security for his loans from the bank; and that the transfers of property to her by him subsequent to February 15, 1933, were made on account of this agreement.

Appellants' objections to the settlement of the account involve the following matters:

1. The failure of respondent Elizabeth B. Boggs to list as assets of her father's estate the property transferred to her by him subsequent to February 15, 1933.

2. The retention by respondent of the sum of $195 per month as rental for the furniture which she owned and which was located in the house at 1015 North Roxbury Drive, for which property the monthly rental of $320 was collected.

3. The inclusion by respondent in her account as an asset of the estate real property which was subject to a deed of trust in favor of the Farmers and Merchants National Bank of Los Angeles.

■ Appellants' first objection is predicated upon their claim that the transfers in question were fraudulent and void because they were made at a time when Paul N. Boggs was insolvent and they were not supported by a valuable consideration. In this connection appellants attack the aforementioned findings, and each of them, as being unsupported by the evidence. Fundamental in our consideration of the merits of this contention of appellants are the following well-established legal principles relating to the question of conclusiveness of the findings of the trial court: The rule of law governing appellate procedure precludes this court from making further inquiry than to ascertain if there is any evidence of a substantial character which supports the finding, and if such be found, the finding should stand regardless of what evidence there might be opposed to the finding. However, there still remains the necessity that there be some support in the record for the finding, and that as against the positive and direct evidence of a fact a mere conclusion or general statement will not be sufficient to meet the definition of substantial or any evidence. [2 Cal. Jur. 918, *et seq.*]

■ The finding that Paul N. Boggs was solvent at the time of the questioned transfers to his daughter, respondent

herein, is wholly unsupported by the evidence. The record indisputably shows that during this entire period his liabilities exceeded the fair market value of his assets, and respondent so admits. It discloses that all of these transfers were made by Paul N. Boggs to his daughter after his income from the Union Oil Company had stopped by reason of his resignation therefrom on February 15, 1933; that he had then no present prospect of ever satisfying his obligations in full; that in December, 1933, a few months after Paul N. Boggs had transferred to his daughter the aforementioned cash and 460 shares of stock of the Union Oil Company of California, he wrote to appellants' testatrix suggesting that since he was without income and was unable to make any payments due her on the $35,000 promissory note she held against him, she take in satisfaction of this indebtedness the property located at 674 South New Hampshire Street, mortgaged as security for this obligation and valued at that time at $18,000; that because of these admitted financial difficulties of Paul N. Boggs, Mrs. Clark in April, 1934, accepted this offer and the property was accordingly deeded to her; that in January, 1935, Paul N. Boggs stated in a written memorandum that all collateral of any value owned by him was held by the Farmers and Merchants National Bank of Los Angeles; that all of Paul N. Boggs' assets, consisting principally of realty and stocks and having an accurately determinable though fluctuating value, were at all times between February 15, 1933, and the time of his death, October 20, 1936, substantially less than the total amount of his liabilities; and that the deficiency as of the last-mentioned date, appearing in the first account current filed by the respondent as executrix, was approximately $70,000. Insolvency, in its popular and general sense, is used to denominate the insufficiency of the entire property and assets of an individual to pay his debts. (*Cain* v. *Richmond,* 126 Cal. App. 254, 259 [14 Pac. (2d) 546].) Measured by this definition, the uncontradicted evidence above recited relative to Paul N. Boggs' financial status demonstrates clearly that he was not solvent during the period under consideration.

At the time the transfers in question were made the law provided that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, was fraudulent and void as to existing creditors.

(Civil Code, sec. 3442.) By virtue of this enactment the concurrence of insolvency and a want of consideration furnished conclusive evidence of an intent to defraud existing creditors. (12 Cal. Jur. pp. 1018-1019, sec. 60, and cases there cited.) Accordingly, if the questioned transfers were made by way of gift, they are subject to attack as fraudulent, but if they were made for a valuable consideration and in partial satisfaction of Paul N. Boggs' obligation to respondent, as the probate court found, they are valid and must be sustained.

Examination of the record reveals that there is a total lack of evidence therein to support the finding of the court that an agreement existed between Paul N. Boggs and his daughter, Elizabeth B. Boggs, to the effect that he would convey to her all property coming into his hands in consideration of her pledging the shares of the National Supply Company preferred stock and the shares of the Union Oil Associates stock as security for his loans from the Farmers and Merchants National Bank. This finding of consideration presumably was based upon the theory that Paul N. Boggs' transfer of the 254 shares of National Supply Company stock to his daughter on August 21, 1928, was a valid completed gift, subject to the bank's lien by virtue of the pledge agreement executed by respondent; that respondent's act in allowing Paul N. Boggs to have the proceeds realized from the sale of 200 shares of this National Supply Company stock, called as of March 31, 1929, applied against the 500 shares of Union Oil Associates stock he had purchased through the bank on March 7, 1929, constituted consideration for the transfer of this latter stock to respondent's name on March 31, 1929, and in pursuance of this arrangement respondent signed the collateral pledge agreement covering this Union Oil Associates stock; and that all further transfers by Paul N. Boggs to his daughter, respondent herein, were made in consideration of her having pledged her stock, originally the gift of her father, as security for his indebtedness to the bank. This theory, however, is not sustained by the evidence. The record shows no more than that Paul N. Boggs, wishing on each of these occasions to give his daughter the stock purchased by him with money borrowed from the bank, had the stock transferred to her name on the aforementioned dates, and she, in recognition of the terms on which these gifts to her were made, executed the two collateral agreements necessary to secure her father's loans. The argument now advanced by

respondent, that at the time she signed these agreements
Paul N. Boggs, in consideration therefor, promised to transfer
to her either the original pledged shares of stock, free of any
lien, or other property of equal value, is not even substan-
tiated by the most favorable interpretation possible of her
own testimony at the hearing before the probate court. On
direct examination of respondent, her counsel, apparently for
the purpose of showing the connection between the transac-
tions of 1928 and 1929 and the transfers made subsequent
to February 15, 1933, asked respondent what, if anything,
was ever said between her father and herself about the pledged
stock, and she answered that ''daddy regretted that because
of his not having yet shaped his affairs to the point where
he wished, that he could not have secured both my mother
and me more than he had.'' This response does indicate that
Paul N. Boggs was naturally concerned over his inability to
provide for his family in the way he desired, but it certainly
does not permit the inference that Paul N. Boggs promised
at the time his daughter executed the pledge agreements in
1928 and 1929, that he in return would make to her future
transfers of all property coming into his hands. The record
clearly shows that when the 200 shares of National Supply
Company stock were called, the bank had a prior right to
all of the proceeds and, in fact, applied them on Paul N.
Boggs' indebtedness to it. Then Paul N. Boggs, under the
same conditions as governed the prior transfer to his daugh-
ter, made to respondent a substitute gift, namely, the 500
shares of Union Oil Associates stock, and as part of the terms
of that gift she signed the pledge agreement to the bank to
secure her father's loans. Under these circumstances the con-
clusion is inescapable that all of the transfers made by Paul
N. Boggs to his daughter subsequent to February 15, 1933,
were without consideration, and since the undisputed evidence
discloses that at all times from this last-mentioned date to
the day of his death Paul N. Boggs, the donor, was insolvent,
the transfers in question must be declared fraudulent and
void as to his existing creditors, of whom appellants' testatrix
was one. Accordingly, such property must be included in
the respondent's accounting of the assets of Paul N. Boggs'
estate.

Appellants' second objection is directed against the
probate court's approval of that part of respondent's account
dealing with the apportionment of the monthly rental received

for the property located at 1015 North Roxbury Drive. As above stated, Paul N. Boggs on October 1, 1936, a few weeks prior to his death, leased these premises for the period of one year for the sum of $320 per month, and as further security for his indebtedness, he assigned this lease to the Farmers and Merchants National Bank, already the holder of a deed of trust on the real property at this location. The lease contained no provision relative to the division of the rental received for the dwelling-house and the furniture subject to its terms. During this year the bank collected the monthly rental of $320, of which sum it retained $125 and the balance, or $195, it paid to respondent, who owned the furniture at the leased premises. As the rent for these premises for this year had all been assigned to the bank, the estate of Paul N. Boggs had no claim to any of it. It is therefore not involved in the present controversy. However, at the expiration of this lease and after September 30, 1937, the tenant continued to hold over upon the same terms as were contained in his prior lease of this property. As under the previous arrangement relative to the handling of the income derived from these premises and during the entire time covered by respondent's first account now before this court, the bank continued to collect the rent of $320 per month, of which amount it paid to respondent $195 and it kept $125. With reference to these monthly rental collections, respondent's account as executrix shows that she charged herself only with the sum of $125, the portion retained by the bank, and that she gave herself a credit in like amount. The remaining $195 received from the bank each month respondent appropriated to her own use. It is appellants' contention that even though respondent did own the furniture in the house at 1015 North Roxbury Drive, it was, nevertheless, her duty to account for the full amount of the rent collected from the tenant of this property since September 30, 1937, the day the lease assigned to the bank expired.

From these facts it is plain that the bank had no right to any of the rent it collected subsequent to this last-mentioned date, and that it likewise was without authority to enter into any agreement with respondent respecting a division or apportionment of such amount. As the monthly rental covered property part of which belonged to the estate and part to respondent individually, and as it was for the property as a whole, the division of that sum as between the two several

owners of the rented property could only be made by the owners, provided it was legal and competent for such parties to enter into such an agreement of apportionment.

It is well settled that an executrix holds the property of her testator's estate as a trustee. (*In re Heydenfeldt,* 117 Cal. 551 [49 Pac. 713]; *Firebaugh* v. *Burbank,* 121 Cal. 186 [53 Pac. 560].) It is equally well settled that an executrix will not be permitted to deal with herself as an individual in any transaction concerning the trust property. (Civil Code, sec. 2230.) In *Davis* v. *Rock Creek L. F. & M. Co.,* 55 Cal. 359 [36 Am. Rep. 40], it is said at p. 364: ''The law, for wise reasons, will not permit one who acts in a fiduciary capacity thus to deal with himself in his individual capacity.'' The following cases are to the same effect: *Wickersham* v. *Crittenden,* 93 Cal. 17, 29 [28 Pac. 788]; *Sims* v. *Petaluma Gas Light Co.,* 131 Cal. 656, 659 [63 Pac. 1011]; *Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185, 191 [135 Pac. 496]; and *Estate of Parker,* 200 Cal. 132, 139 [251 Pac. 907, 49 A. L. R. 1025]. In *Wickersham* v. *Crittenden, supra,* at p. 29, it is further stated in respect to a transaction wherein a trustee sought to deal with trust property: ''Courts will not permit any investigation into the fairness or unfairness of the transaction, or allow the trustee to show that the dealing was for the best interest of the beneficiary.'' This language is quoted with approval in the case of *Pacific Vinegar & Pickle Works* v. *Smith,* 145 Cal. 352, 365 [78 Pac. 550, 104 Am. St. Rep. 42].

While under these authorities the fairness of the apportionment here in controversy cannot be made the subject of inquiry in this action, it might not be amiss to mention the fact that the assessed value of the real property at 1015 North Roxbury Drive was $17,260 and that of the furniture at the same location was $3,000. Furthermore, the statement of the Farmers and Merchants National Bank as contained in the record shows that for some months prior to October 1, 1936, the bank collected $280 per month as rental for these premises and during this time paid to Elizabeth B. Boggs the sum of $80 per month, but after October 1, 1936, the bank received $320 per month as rent for the same property and paid to Elizabeth B. Boggs the sum of $195 per month.

Under the above line of decision the apportionment of the rent by respondent between herself individually and the estate of her father, she being the executrix of his will, cannot

be sustained. It is beyond the power of the court to approve such a contract or transaction. (6 Cal. Jur. 150; *Union Collection Co.* v. *Buckman,* 150 Cal. 159 [88 Pac. 708, 119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568]; *Eymann* v. *Wright,* 177 Cal. 144 [169 Pac. 1037]; *Haley* v. *Bloomquist,* 204 Cal. 253 [268 Pac. 365]; *Takeuchi* v. *Schmuck,* 206 Cal. 782 [276 Pac. 345].)

■ However, while the challenged agreement or understanding between respondent and the bank respecting the division of the income derived from this property is illegal for the foregoing reasons, it does not follow that respondent should be deprived of a reasonable rental for her furniture during the period of time since September 30, 1937, the expiration date of the aforementioned assignment of the rentals to the bank. Accordingly, respondent should account for the entire income derived from these premises since September 30, 1937, less the reasonable rental value of her furniture during this period. It appears from the record that no claim was made before the probate court that the sum of $195 or any other amount was a reasonable rental for this furniture, and the court's approval of respondent's right to retain the amount of $195 per month as rental for her furniture was based entirely and solely upon the agreement made by respondent ostensibly with the bank but actually with herself. As this agreement was illegal, respondent, as above stated, is not entitled to take advantage of its terms. However, the illegality of the agreement in no way affects her right to receive a reasonable rental for her property, and a further hearing of this matter should be had in the probate court for the purpose of determining the reasonable rental value of her furniture for the period mentioned.

■ Appellants' third and final objection, charging that the probate court erred in permitting the respondent as executrix to include in her account as an asset of the estate certain encumbered real property, is without merit. The fact that the premises known as 1015 North Roxbury Drive, Beverly Hills, and two parcels of land are subject to a deed of trust placed thereon by the decedent Paul N. Boggs in favor of the Farmers and Merchants National Bank as security for his indebtedness to the bank and for which debt the bank has filed its claim against the estate, does not preclude this property from being an asset of the estate. This property subject to said encumbrance was the property of Paul N.

Boggs at the date of his death, at which time it became a part of "the estate of the decedent." It was properly included in the inventory of his estate returned by the executrix in compliance with section 600 of the Probate Code, which requires an executor or administrator to file an inventory and appraisement of the estate of his decedent which has come to his possession or knowledge. Whether or not this property was ever in the actual possession of the executrix is immaterial here, for there is no contention that she did not have knowledge of it. Assuming it was the duty of the executrix in rendering her correct account, to list therein all property of the estate undisposed of at the date thereof, the encumbered, as well as the unencumbered, property of the estate was rightly included in the list of property then in her hands.

Appellants' objection to the inclusion of this encumbered property in the executrix' first account no doubt was made upon the theory that for the purpose of fixing the fees of the executrix and those of her attorney, the probate court should not include this property in its determination of the value of the estate. The mere inclusion of encumbered property, however, either in the inventory or in the account, or in both, would not control the action of the probate court in fixing such fees. Whether the fees thus fixed should be based upon the actual value of the property or its value less encumbrances thereon would depend upon other considerations than the mere listing of the property in the account. (*Estate of Lampman,* 15 Cal. (2d) 212 [100 Pac. (2d) 488].)

The first account current in this estate was filed on November 24, 1937. An appeal from the order of settlement was taken by the present appellants, and the order, with one exception not necessary to mention at this time, was reversed on the ground [among others] that the probate court erred in allowing the sum of $1,000 to each the executrix and her attorney on account of their fees in said estate. The court held that said allowances were excessive. (*Estate of Boggs,* 33 Cal. App. (2d) 30 [90 Pac. (2d) 814].) After the decision in that appeal became final, said first account current again came before the probate court for settlement, and the present appeal was taken from the order settling the same at the second hearing. The probate court made no order allowing fees to either the executrix or her attorney at this second hearing, so the question of their fees is not before this court on this appeal. The probate court, however, refused to strike

from the account the encumbered real property belonging to the estate. But this action of the court can have no effect upon its future action when the matter of fixing the fees of the executrix and those of her attorney comes before it. Appellants' last contention cannot be sustained.

For the foregoing reasons the order approving the first account current is reversed, with directions to the probate court to settle the account in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.