[Civ. No. 13865.   Second Dist., Div. One.   Apr. 13, 1943.]

Estate of SAMUEL A. SCHERER, Deceased. GLORIA SCHERER KELLY, Appellant, v. EDWARD J. COTTER, Respondent.

Elmer P. Bromley, H. E. Lindersmith and Frank E. Carleton for Appellant.

Edward J. Cotter, in pro. per., for Respondent.

WHITE, J.,—A rehearing was granted in this case that we might give further consideration to respondent's claim that the appeal should be dismissed for the asserted reason that appellant has neither an interest in the subject-matter of the appeal, nor is she an aggrieved party within the contemplation of the code section designating those entitled to appeal from an order or judgment; and the further claim that appellant has no standing in any proceeding to reverse or modify the decision or order (Prob. Code, sec. 1233; Code Civ. Proc., sec. 938).

The controversy with which we are here concerned centers about respondent executor's claim for extraordinary commissions. It appears that the estate of the decedent consisted of numerous corporations, all actively engaged in business transactions consisting in the main of a loan and finance business, in the conduct of which by decedent during his lifetime the executor of his will acted as the former's attorney, and in conjunction with decedent managed, operated and controlled such corporations prior to the death of decedent, who owned them. Although the will is not before us, it is conceded that such testamentary document named two children of decedent by a former marriage as sole legatees,

and to his widow he made certain bequests. During the course of administration, the widow of the decedent purchased the interests of both children, through which purchase she became vested with 100 per cent of the corporate stock of all five of the corporations belonging to the estate. On December 13, 1937, the widow sold such corporate stock to National Funding Corporation. On the last named date, pursuant to an order of partial distribution made by the probate court, the estate delivered to National Funding Corporation all the aforementioned stock. Pursuant to the provisions of section 1001 of the Probate Code, and in accordance with the court's order for partial distribution, National Funding Corporation deposited with the executor of decedent's estate the sum of $60,000 in lieu of a bond provided for in the last cited section; this sum to be utilized as directed in the court's order for the "liquidation of claims, taxes, fees and kindred estate liabilities." Pursuant to the terms of section 1001, *supra*, whatever remained of the aforesaid deposit made by the distributee, National Funding Corporation, after the express purposes and uses for which said fund was to be used had been accomplished, the balance remaining, and which constituted all of the cash remaining in the estate, should be, as the court directed, returned to such distributee. When this was done there remained for distribution to the widow, appellant herein, only 200 shares of certain mining stock, appraised as having no value whatever, and one piece of realty having an appraised value of $25.

By his second and final account and petition for distribution respondent executor sought an allowance of extraordinary commissions for services allegedly rendered by himself as executor in the sum of $20,850, but the probate court found that the sum of $8,000 was a reasonable fee for the claimed extraordinary services, and directed the payment of such last named amount to the executor. By way of answer to the executor's petition, appellant widow, while challenging the executor's claim for extraordinary commissions, did not contest the distribution of the estate as prayed for. Appellant widow's answer alleged that the executor had entered into an agreement whereby he consented to accept the sum of $1,000 in full payment of whatever extraordinary services he had rendered the estate, and further alleged that the sum of $20,000 was an inordinate amount for the services actually

performed, and prayed that an allowance for such commissions be made to him in an amount not exceeding the sum of $1,000 allegedly agreed upon.

██ After additional study of the record herein and a review of the cases cited, we are persuaded that respondent's motion to dismiss the appeal must be denied. Bearing in mind the rule which declares that the law looks with favor upon the determination of litigation upon the merits of the controversy rather than upon technical grounds, we are impressed that the record upholds appellant in her claim that she did assert her interest in the money of the estate in the lower court, at least to the extent of apprising the court and respondent of such claimed interest upon her part. During the hearing in the probate court, the record discloses that one of appellant's attorneys stated that she was unable to be present by reason of her being in Honolulu, whereupon respondent himself stated ''No question about any right you have to appear and represent her.'' Thereupon appellant's counsel concluded a statement he was making to the court by saying: ''Under that partial distribution, they paid about $60,000 in cash and that was retained by the estate and as the property of the estate, it is the property of Mrs. Scherer. Now, the question arises as to what extra services Mr. Cotter has rendered, and we are not attempting to tell the court that he has not earned extra compensation.'' Another of appellant's attorneys then inquired ''May the statement of Mr. Bromley (also one of appellant's counsel) be considered as testimony in the case?''; to which respondent replied ''certainly.'' In view of the foregoing, a statement made by appellant in her reply brief that ''The record is silent upon the subject,'' can not fairly be held to be an admission that the record is barren of proof upon the question of her actual interest in the $60,000 deposited with the executor, but that it was rather a concession that the record was ''silent'' upon the subject of an agreement referred to in the brief, between the appellant and her assignee, the Funding Corporation. It may be said with certainty that the record discloses that in the lower court respondent made no objection to the appearance of appellant in the proceeding, and no claim was there made that she had no interest in the estate. ██ Respondent seeks, for the first time on appeal, to raise the question of the interest of appellant in the estate; whether or not she is an aggrieved

party or has no standing in a proceeding to reverse or modify the order. This, respondent is not permitted to do (*Estate of Miller*, 16 Cal.App.2d 141, 153 [60 P.2d 492], and cases therein cited). ■ Respondent's claim that the evidence given by one of appellant's counsel that the $60,000 paid into the estate by the Funding Corporation "is the property of Mrs. Scherer" is "the sheerest of conclusions and hence not entitled to consideration" finds an answer in the fact that respondent himself at the hearing suggested that the statement be received in evidence, and did not dispute its verity or cross-examine the witness who so testified.

■ Respondent's second contention that the order appealed from is not an appealable order is without merit. Section 1240 of the Probate Code authorizes an appeal from an order "settling an account of an executor or administrator, etc." The notice of appeal herein specifically states that the same is taken "from the order settling the second and final account of Edward J. Cotter, Executor, and directing said executor to pay himself the sum of $8,000 as extraordinary commissions and for distribution." Manifestly, the court must determine what is left in the estate to distribute before it can order distribution, and until the amount of executor's fees are definitely and finally determined, the order of distribution can not be made. This appeal was, therefore, properly taken from the order "settling the second and final account" of the executor, insofar as such order related to the allowance to said executor of $8,000 as extraordinary commissions (*Estate of McAllister*, 134 Cal.App. 349, 350 [25 P.2d 507]).

■ As a first ground of appeal, it is urged by appellant that the findings do not support the order. The two findings under attack are "that the allegations of the petition for allowance of extraordinary fees to executor are true except that $20,850 is an unreasonable fee for the extraordinary services so rendered, but that the sum of $8,000 is a reasonable fee for the extraordinary services so rendered;" and "that the answer of Gloria Scherer to the petition for extraordinary fees for the executor are not well taken and are overruled." Appellant contends that the finding as to the answer is in the form of a negative pregnant, implying the truth of at least some of the allegation therein contained, without showing which ones, if any, are untrue (*Austin* v. *Harry E. Jones, Inc.*, 30 Cal.App.2d 362 [86 P.2d 379]). We do not so view

the questioned findings. To us it clearly appears that one of them negatives the allegations of appellant's answer insofar as the only contested issue before the court was concerned. We find from the record that when the court inquired as to whether appellant had "Any objection to the settlement of this account;" one of her counsel replied "No, Your Honor, our answer objects to the extraordinary fees only." While general findings have sometimes been criticized, a finding that "the allegations of the defendant's answer are false," while characterized as an omnibus finding, has been held sufficient (*Cohn* v. *Kelly*, 132 Cal. 468 [64 P. 709]; *County of San Diego* v. *Seifert*, 97 Cal. 594 [32 P. 644]; *Fritz* v. *Mills*, 170 Cal. 449 [150 P. 375]). Findings such as the ones with which we are here concerned, while often criticized, are nevertheless supported by too strong an array of authority to be now overthrown. The petition averred that the services rendered in the aggregate were worth a certain sum, while the answer alleged that the services in question were not extraordinary or that if they were, the same possessed no value or were of little value to the estate. It is equally clear that the findings determined that all of the allegations of the petition were true except that instead of being worth the sum claimed by the executor they were of the reasonable value of a lesser sum. Such a finding of itself necessarily implies that the allegations of the answer in denial thereof were untrue.

Appellant next contends that the order can not be sustained because the allowance covers legal services rendered by the executor who acted as his own attorney. The weight of authority in this state supports the rule that where the executor, administrator or testamentary trustee is himself a practicing lawyer, and elects to act as his own attorney in the performance of the legal services incident to the administration of the estate, in the absence of some statutory provision entitling him thereto, he will not be permitted to receive an allowance against the estate for his professional services (*Estate of Parker*, 200 Cal. 132, 135 [251 P. 907, 49 A.L.R. 1025]). This doctrine is founded on reasons of public policy set forth at length in a carefully prepared and well considered opinion authored by Mr. Justice Finlayson in the just cited case. It is the duty of courts to uphold this sound and wholesome doctrine, by the terms of which an attorney-executor who himself performs the legal and profes-

sional services relating to his trust shall not be allowed to charge for his own professional services. Therefore an attorney-executor should not be permitted to do indirectly what the law forbids him to do directly, viz., refrain from employing an attorney and then charge for professional services under the guise of rendering them as executor services. However, as we view the instant proceeding, such was not the case here. ▪ While some of the work done by the executor might, strictly speaking, be classified as legal or professional services, the vast majority of the work done was in the category of the ordinary duties of an executor which embraced the conservation, management and preservation of the estate. It would unduly prolong this opinion to here set forth in detail the services rendered by the executor for which he sought extraordinary commissions. Suffice it to say that the executor herein had been the friend and legal advisor of decedent since about 1904, until the latter's death in 1935. At the date of the testator's demise he controlled and operated five business corporations, the principal business of which was lending money. For several years prior to the death of the testator, he and the executor herein controlled and managed the affairs of the aforesaid corporations. Upon the death of the decedent the executor took personal charge of four of such corporations and, to use the language of his petition herein, "was constantly and continuously conferring with corporation department managers regarding the business policies of the various corporations; did control 100% of the voting stock of each of said corporations. . . . That during the major part of said time the Pacific Southwest Discount Corporation discounted its loans with the Seaboard National Bank of Los Angeles and during the time petitioner was controlling said corporations, said corporation's discount open account was increased from $150,000 to approximately $700,000, and your petitioner did devote a portion of each day for more than a year after death of decedent to said management.

"Your petitioner did further devote his time and talents unstintingly to negotiations with the management of said corporations, with the minor children of and widow of deceased and their attorneys, to the end that none of them interfered with the active management of said corporations.

"That he did, in consultation with said minor children through their attorneys, agree to continue to dominate said

corporations through vote control over nominal directors to the exclusion of the personal desires of each heir or beneficiary.

"That he did negotiate with the Seaboard National Bank, with the children of and widow of deceased through their attorney to the end that Seaboard National Bank would continue to discount loans created by said corporations or until the stock held by the estate might be sold provided your petitioner would not change the management of any of said corporations and would continue to dominate all of said corporations. That in June, 1937, the widow, Gloria Scherer, who, by mesne assignments acquired the total, of the distributive shares of said children of deceased, became the owner of said estate, and sold her rights to distribution to all of the shares of stock in the various corporations to National Funding Corporation.

"That during, and while said corporations were operated under the stewardship of petitioner, the value of the stock so held by petitioner increased in value from $298,793.23, the appraised value, to approximately $500,000.00."

In addition to the foregoing, the executor averred in his petition that he negotiated for the extension of mortgages; appeared in a controversy that arose with the Department of Internal Revenue of the Federal government and the State Inheritance Tax Department. It is also set forth in the executor's petition and was found by the court to be true, that as a result of the extraordinary services rendered by the executor "there has been a possible saving to said estate generally" a sum approximating $82,500.

Section 902 of the Probate Code authorizes a just and reasonable award of extraordinary commissions for most, if not all of the work performed by the executor as set forth in his petition. Even though we exclude certain services objected to by appellant as constituting legal services, such as "negotiated a novation"; signed "stipulation to set aside original inheritance tax report and order" as "attorney for executor"; conferred with other attorneys and "checking at the law library," we can not say that an award of $8,000 was unjust or unreasonable for the services performed which come within the purview of an executor's duties.

While it is true as contended by appellant that the court did not make a specific finding as to what portion of

the services rendered were executor services and what part was in the category of legal services, nevertheless it is apparent from what we have herein stated that when all of the services which might be characterized as "legal" were eliminated there still remains within the sphere of "executor" services a sufficient amount of work done by the executor in conserving and preserving the estate for which an award of $8,000 as made can not be considered unjust or unreasonable. All intendments being in favor of the judgment rendered on the order made we can not assume that in reducing the claimed amount of $20,850 for extraordinary commissions to $8,000 the court did not exclude all so-called "legal" services. Furthermore, if in addition to its findings that the allegations of the executor's petition for extraordinary services, save and except as to the claimed value thereof, were true, which was an implied finding adverse to appellant's claim that most if not all of the services rendered were "legal" and not "executor" in character, the court had made more complete findings on the issue of what were "legal" and what were "executor" services, such findings would under the evidence have been adverse to the contention of appellant that the "executor" services performed by respondent were not reasonably or justly worth the reduced amount of $8,000 allowed by the court. That being so, the failure of the court to find further than it did on this issue is not a ground for setting aside the order made (*Goff* v. *Goff*, 52 Cal.App.2d 23, 30 [125 P.2d 848], and cases therein cited).

The allowance of extraordinary fees is a matter of discretion with the trial court and is not to be interfered with on appeal except for abuse. Such discretion not only invests the trial court with the power to determine whether the character of the services is such as to warrant extra compensation, but to determine the amount. In *Estate of Pomin*, 33 Cal.App.2d 544, 546 [92 P.2d 479], it was said "We are of the opinion a probate judge, who has before him all of the proceedings of an estate, together with evidence of the exact nature of extraordinary services performed incident to probating it, is not bound to fix the compensation therefor, under section 902 of the Probate Code, at the estimated value testified to by expert witnesses produced by the executor, even though no witness is called to dispute their opinions in that regard. It is the province of the trial judge, under such circumstances, in the exercise of sound discretion, to de-

termine the weight of the evidence and the value of the services performed and to allow the executor or attorney such sum 'as the court may deem just and reasonable for any extraordinary services.' (Sec. 902, Prob. Code.)''

In *Estate of Keith,* 16 Cal.App.2d 67, 70 [60 P.2d 171], which involved an appeal from an order allowing extraordinary fees, it was held ''In a probate matter, it is particularly within the power of the trial judge, who has all of the records before him, to fix and determine what fees are proper. (*Estate of Vaughan,* 14 Cal.App.2d 594 [58 P.2d 742].) Section 910 of the Probate Code provides that attorneys for executors shall be allowed such amount as the court 'may deem just and reasonable for extraordinary fees.' It is the duty of the court to determine whether or not services denominated 'extraordinary' were necessarily required in the administration of the particular estate, and if so, to decide what would be a just and reasonable allowance. In making its order fixing such fees, the court has a large discretion, and when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal, except only in the face of a plain abuse of discretion. (11B Cal.Jur. 506, sec. 1056; *Estate of Parker,* 186 Cal. 671 [200 P. 620]; *Estate of Iser,* 52 Cal.App. 405 [198 P. 1014].)''

Under the circumstances presented by the record before us, it can not be held as a matter of law that the award herein impinged upon the rule prohibiting an attorney executor from recovering extraordinary commissions for legal or professional services, nor that the allowance was so excessive as to constitute an abuse of discretion upon the part of the probate judge.

Finally, appellant urges that no award of extraordinary fees to the executor for controlling, managing and operating the various business corporations of decedent after the latter's death can be made for the reason that no court order authorizing a continuance of decedent's business was procured in compliance with section 572 of the Probate Code. We think it may be said authoritatively that it is the duty of an executor, with or without an order of court, to take charge of property of an estate and to maintain and preserve it in as good condition as is reasonably possible during administration (*Estate of King,* 19 Cal.2d 354, 358 [121 P.2d 716]). In that case it was said ''Where a continuation of the business

of a deceased person during administration results in a profit to the estate, it has frequently been said the executor is entitled to extra compensation therefor, even though he voluntarily assumes to perform that service.'' The petition for extraordinary fees herein, the allegations of which, except as to the amount claimed therefor, the court found to be true, shows that the business corporations of the testator were conducted by the executor at a profit to the estate. Furthermore, there is an exception to the general rule that it is not the duty of an executor ordinarily to carry on the business of the testator during the administration of his estate. That exception exists, said the court in *Estate of King, supra,* ''Where the will of the testator expressly creates the power so to do, or where the carrying on of a business would be cast upon the executor as a necessary means for the preservation of the estate.'' (See also *Riedy* v. *Bidwell,* 70 Cal.App. 552 [233 P. 995], at page 555.) The will of decedent is not before us, and in view of the action of the court in allowing extra fees for the conduct of testator's business by the executor, coupled with the absence of objection upon the part of appellant or other beneficiaries under the will, we can not assume that the will did not contain such authorization. In any event, it appears from the executor's petition for such fees that preservation of the estate required a continuance of the various enterprises conducted by decedent in his lifetime. Certainly, there is no showing to the contrary. It must be conceded that the probate court was clothed with power to authorize the executor to conduct testator's business. Therefore the court possessed the power to ratify such action on the part of the executor, done without a previous court order (*Estate of Maddalena,* 42 Cal.App.2d 12, 19 [108 P.2d 17]). Especially is this true where the carrying on of the business was a necessary means to preserve the estate. In the absence of bad faith upon the part of the executor or an abuse of discretion by the trial court in awarding extraordinary commissions for the performance of such services, the appellate court would not be warranted in interfering with the action of the trial court (*Estate of Maddalena, supra*). Where extra compensation is allowable for services of this kind, it is within the sound discretion of the probate judge to fix the amount thereof, and his action will not be disturbed on appeal unless the award clearly appears to be excessive (*Estate of King, supra*). In the circumstances presented by the record herein,

it can not be held as a matter of law that the trial court abused its discretion either in allowing compensation for these extraordinary services as executor services or in fixing the value thereof at $8,000.

For the foregoing reasons the order appealed from is affirmed.

York, P. J., and Doran, J. concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 10, 1943.·