[Civ. No. 9031.   Third Dist.   Apr. 25, 1957.]

Estate of EINO JOHN PESULA, Deceased. ALMA PESULA CLYNE, Appellant, v. P. A. PESULA, as Administrator With the Will Annexed, Respondent.

Joseph T. Curley for Appellant.

Mannon, Brazier & Bell for Respondent.

WARNE, J. pro tem.*—This is an appeal by Alma Pesula Clyne from an order settling the first amended account of the administrator with the will annexed for the estate of Eino John Pesula, deceased, and from an order allowing said administrator fees for extraordinary services.

P. A. Pesula, as administrator of the estate of the deceased, and respondent herein, filed in June of 1955 his first and final

*Assigned by Chairman of Judicial Council.

account. Thereafter, Alma Pesula Clyne, a legatee, and appellant herein, discovered that the administrator had collected $3,000 as insurance on account of damage to a tractor owned by the deceased, which he had not accounted for. She then filed objections to the account, and the hearing was set for July 19, 1955, at which time it came on for hearing. At the hearing respondent testified that he had received the $3,000 but had not reported it to the court, because he did not think it was part of the estate money. He said it was just for the repair of the tractor and had no bearing on the case. He further testified that he had spent $3,307.52 in making said repairs. At the conclusion of this hearing, the court ordered respondent to file an amended account which would include the $3,000 insurance which he received and show the items of expense for the repairs of the tractor. The matter was then continued to August 19, 1955, for further hearing. Respondent filed his amended account and included in his disbursements "Costs of repairs to tractor from Feb. 4, 1955 to June 4, 1955 as follows: $3,307.52." The repairs were itemized as shown below.

| | |
|---|---:|
| P. A. Pesula, rental and use of 1½ ton truck to haul equipment and tools, 61 trips at 28 miles at 20c per mile | $ 341.61 |
| P. A. Pesula, rental and use of pickup truck, 24 trips at 28 miles at 10c per mile | 67.20 |
| P. A. Pesula, welding equipment rental | 136.00 |
| P. A. Pesula, move tractor to Boonville | 61.80 |
| P. A. Pesula, repair labor, 485 hours at $2.50 | 1,192.50 |
| K. J. Kelly, labor 3/15/55 to 6/20/55 | 800.00 |
| Various materials and supplies | 119.84 |
| Don Kollger, labor | 91.57 |
| Edward Warren, labor | 196.00 |
| John Wagner, labor | 93.00 |
| Sidney Johnson, labor | 32.00 |
| Payroll taxes | 34.88 |
| Social Security tax | 23.25 |
| Unemployment insurance | 11.62 |
| Workmen's compensation insurance | 106.25 |
| Total repairs | $3,307.52 |

As part of said account and report the respondent alleged "If the court decides that the aforesaid items of truck rental and administrator's labor aggregating $1,918.95 are not allowable under the authority of *Estate of Howard,* 133 Cal.

App.2d 535 [284 P.2d 966], then this administrator claims said sum of $1,918.95 as an allowance of extraordinary commission under the authority of *Estate of Scherer*, 58 Cal.App. 2d 133, 142 [136 P.2d 103]. Oral testimony adduced at hearing of July 19, 1955, is hereby made a part hereof.''

At the hearing held on July 19, 1955, respondent testified that he used his own trucks and equipment for making the repairs, and that he had made 61 trips of 28 miles each to the site of the tractor with a 1½-ton truck and 24 round trips with a pickup truck for the purpose of carrying heavy equipment and tools for the repair job; that $341.61 was a reasonable rental charge for the use of the 1½-ton truck, and that $67.20 was a reasonable rental value for the use of the pickup truck. He also said that he used and made no charge for some $300 worth of parts that were six or seven years old and had been taken from a tractor which he formerly owned. He further testified that he used his own welding equipment for which he charged the estate $136. This charge was at the rate of $2.00 per hour for 68 hours. He further testified that the charges for the rental of the two trucks and the welding equipment were reasonable and that cheaper service was not available. He also testified that he put in 485 hours in making these repairs which were reasonably worth $2.50 per hour or a total of $1,192.50. He also purchased various materials and supplies for the repair of the tractor which amounted to the sum of $119.84. In addition thereto, he paid the sum of $1,388.57 for labor, payroll taxes, social security tax, unemployment insurance and compensation insurance; and that those charges were reasonable and necessary.

Appellant filed written objection to the amended account. The matter was submitted to the court on September 16, 1955, and on September 27, the court made an order settling the amended account and report and allowing the administrator $1,918.95 for extraordinary services rendered. All objections to the account were overruled. The September 27 order was amended on October 6, 1955, wherein the $3,307.52 representing the cost of repairs to the tractor was disallowed. However, on the next day the latter order was amended so as to disallow the repairs to the tractor only to the extent of $1,918.95; or, in other words, an allowance of $1,388.57 for said repairs.

Appellant appeals from the order of September 27 as amended by the order of October 6, 1955. She claims that she had no knowledge of the amendment of October 7 until after the time for appealing therefrom had expired. However, we

see no reason why this court cannot consider the appeal to be taken from the order as finally amended. The court has power to correct its orders so that they express the intent of the court. Rule 1 of Rules on Appeal states that a notice of appeal shall be liberally construed in favor of its sufficiency. Applying both of these rules, we are of the opinion that this court can consider the appeal from the order as finally amended by the probate court.

Appellant first contends that at least ten days' notice should have been given of the hearing of the amended account pursuant to section 1200 of the Probate Code. We do not believe that such notice was required to be given in this particular matter since at the July 16 hearing the matter was continued to August, 1955, for further hearing. However this may be, appellant having voluntarily appeared and contested the account, she is foreclosed from urging the want of statutory notice. (*Estate of Palm,* 68 Cal.App.2d 204 [156 P.2d 62], and cases cited therein.) Nor is she in a position to object to the request made by the respondent that the court consider the testimony taken at the July 19 hearing as part of the record at the subsequent hearing of the amended account. It does not appear that she made such objection prior to the time the matter was submitted to the court. Her objection now comes too late.

Appellant objects to the asserted failure of the court to make findings of fact. Findings of fact may be included in the judgment or order. (*Estate of Janes,* 18 Cal.2d 512, 514 [116 P.2d 438].) While the several orders which the court made are rather informal, we feel that they find upon the ultimate facts in issue, and are therefore sufficient. (24 Cal.Jur., Trial, § 207.)

Appellant next contends that the only powers of an administrator to make repairs to estate property are found in section 581 of the Probate Code, which provides in part: ''He [the administrator or executor] must keep in good tenantable repair all houses, buildings and fixtures thereon which are under his control.'' And since this section does not confer upon him the express power to repair any other property of the estate, respondent lacked the power to repair the tractor. We do not entirely agree with appellant. At the time respondent was appointed administrator of the estate, the tractor was in a damaged condition and located in the woods some 14 miles from the deceased's headquarters. It was damaged to the extent that it could not be operated. Respondent testified that

before making the repairs, he considered moving the tractor by a truck, but the road leading to the site where it was located was in such condition that a "transport" could not travel over it. It was then that respondent decided to repair the tractor so that it could be moved by its own power. The court found that the respondent in making the repairs acted with the utmost good faith and for what he believed to be the best interests of the estate.

We feel that respondent had the authority to make reasonable and necessary repairs to the tractor. Under the law it was his duty to take charge of it and also to preserve it. The tractor was a valuable piece of machinery. In its damaged condition it had been appraised at $3,750. The trial court impliedly found that the repairs were necessary in view of the testimony that it could not be moved by a "transport" and that the cost of making such repairs was reasonable. Concededly, the repair job added value to the tractor. Under the circumstances we find no reason to disturb the court's order on this ground.

Lastly, it is contended that there is no evidence to support a finding that respondent performed extraordinary services of the value of $1,918.95. The claim for extraordinary services is presumably made up of the following items: Rent of the administrator's 1½ ton truck, $341.61; the rent of his pickup truck, $67.20; rent of his welding equipment, $136; his own labor, 485 hours, $1,192.50; materials and supplies, $119.84; and labor and equipment for moving the tractor, $61.80. Obviously, the rental of materials and supplies does not constitute services, nor does the charge of $61.80 for a pilot car. The only allowable claim for services would be the item of $1,192.50. That is the maximum that should have been allowed for extraordinary services since the respondent made no claim for any other service that might be termed extraordinary. All of the other items are of a contractual nature. In renting the truck and welding equipment to the estate, respondent was dealing with himself as an individual. Such items of expense should not have been allowed under the guise of extraordinary fees.

It is well settled that an executor or administrator will not be permitted to deal with himself as an individual in any transaction concerning trust property. (Civ. Code, § 2230; *Estate of Boggs,* 19 Cal.2d 324, 333 [121 P.2d 678].)

The trial court is ordered to correct and reduce the allowance for extraordinary fees to the sum of $1,192.50, and

as modified, the order appealed from is affirmed, each side to bear its own costs on appeal.

Peek, J., concurred.

VAN DYKE, P. J., Concurring and Dissenting.—I concur except insofar as the decision disallows a part of the award of extra compensation.

The majority opinion presumes that the claim for extraordinary services was made up of specific items for rent of 1½ ton truck, pickup truck and welding equipment, for the administrator's own labor, and for material and supplies furnished by him. I think that presumption should not be indulged. The claim for extra compensation is a claim in gross. The court was not required to break its allowance down into the mentioned items. It is apparent from the record that the court rejected the contract basis for the claim which the administrator advanced as an alternative to an allowance for extraordinary services. It is apparent, too, that the court did so in view of the rule stated in *Estate of Howard* and in *Estate of Boggs* forbidding an administrator from dealing with himself as an individual in any transaction concerning trust property. It is equally apparent that the court made its order under the alternative claim for extra compensation. The court could do this. The fact that the administrator's claim, based on contract and resting on dealings between himself as an individual and himself as a trustee, could not be allowed even in part did not prevent him from recovering on a claim for extraordinary services, if any such claim he had. (*Estate of Boggs*, 19 Cal.2d 324, 334 [121 P.2d 678].) In determining whether he had such a claim, the court could, as it did, consider his good faith, and its finding that in all things he acted in good faith was material in the determination of whether or not he was entitled to any compensation for extraordinary services. When he presented his contract claim, the court simply shut the door to any claim so based and proceeded to examine into the claim for extra compensation.

"The allowance of extraordinary fees is a matter of discretion with the trial court and is not to be interfered with on appeal except for abuse. Such discretion not only invests the trial court with the power to determine whether the character of the services is such as to warrant extra compensation, but to determine the amount." (*Estate of Scherer*, 58 Cal. App.2d 133, 142 [136 P.2d 103].)

In my view, the use of the administrator's 1½ ton truck, pickup truck and welding equipment are matters just as properly considered in fixing extra compensation as are the hours of the administrator's own labor. His efforts to accomplish the repair of the tractor included his own labor, in the rendition of which service the use of the machinery was an indistinguishable and inseparable part, without which his labor would have been of little account. I think the trial court impliedly so concluded. When the court turned to the allowance to be made, it could properly consider the going rate for labor and rental of equipment as affording acceptable proof of the amount that should be allowed. The fact that in its order it allowed the total of the various items referred to in the majority opinion does not mean that thereby the court departed from the basis of allowance for extraordinary services and went back to the contract basis.

I would affirm the order appealed from without modification.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1957.