102 Cal.App.3d 365 (1980)
162 Cal. Rptr. 393
Estate of BYRON LATHAM HAVISIDE, Deceased.
JOHN F. FORBES & COMPANY, Petitioner and Appellant,
v.
ELIZABETH HAVISIDE SHEEHAN, Objector and Respondent.
Docket No. 47237.
Court of Appeals of California, First District, Division Three.
February 21, 1980.
*366 COUNSEL
Max Gutierrez, Robert M. Chilvers and Brobeck, Phelger & Harrison for Petitioner and Appellant.
Vincent J. Mullins, Richard H. Wise and Mullins, Wise & Dickman for Objector and Respondent.
*367 OPINION
TAKEI, J.[*]
A coexecutor of an estate had his firm hired to do the accounting services required by the estate. The trial court held that such self-dealing is not compensable. We reverse because Probate Code section 902 authorizes payment.
B.L. Haviside died in 1973; his will appointed three executors for his estate. One of them, Dawson, had been an employee of Haviside between 1947 and 1964, at which time Dawson took a position with John F. Forbes & Company, the appellant. Forbes & Company had prepared Haviside's personal income tax returns from 1962 to 1972 and the tax returns of Haviside's corporations from 1964-1967. Forbes was hired by the coexecutors to perform routine accounting services for the Haviside estate. At that time Dawson was a partner in Forbes & Company.
In late 1976 the coexecutors petitioned the court for authorization to pay John F. Forbes & Company approximately $30,000 in accountant's fees in addition to somewhat more than $2,000 which they had already received on account. The respondent here, Elizabeth Sheehan, a daughter of the decedent and residuary beneficiary under his testamentary trust, filed objections which resulted in the revelation that the amount requested was excessive by approximately $9,300. Subsequently Sheehan moved to deny any fee to Forbes on the ground that Dawson had violated public policy by hiring his own firm to render professional services to an estate of which he was coexecutor. In May 1978, the court issued a memorandum order denying fees to Forbes (Dawson himself was dead) but allowing the company to keep the $2,000 previously paid to it.
Forbes entered the lawsuit for the first time by filing a motion to vacate judgment and by filing objections to the court's proposed findings and conclusions. The court summarily denied the former on jurisdictional and substantive grounds and overruled the latter. It then entered final judgment, adopting its original findings and conclusions. Forbes appeals from the denial of the motion to vacate.
As a preliminary matter we find that Forbes has standing to appeal. "Any aggrieved party," that is, one whose interests are "`"immediate, *368 pecuniary, and substantial"'" and are injuriously affected by a judgment, may appeal that judgment. (County of Alameda v. Carleson (1971) 5 Cal.3d 730, 736-737 [97 Cal. Rptr. 385, 488 P.2d 9], app. dism. (1972) 406 U.S. 913 [32 L.Ed.2d 112, 92 S.Ct. 1762]; Code Civ. Proc., § 902.) A legally aggrieved party must usually also be a party of record in order to appeal, but one becomes a party of record simply by filing a motion to vacate pursuant to Code of Civil Procedure section 663 as Forbes did. (Carleson, supra, 5 Cal.3d at p. 736.) The rules are to be construed liberally to permit real parties to conduct their own appeals. (Redevelopment Agency v. City of Berkeley (1978) 80 Cal. App.3d 158, 166 [143 Cal. Rptr. 633]; Aries Dev. Co. v. California Coastal Zone Conservation Com. (1975) 48 Cal. App.3d 534, 542 [122 Cal. Rptr. 315]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeals, §§ 116, 117.)
Contrary to Sheehan's contention the rule does not allow Forbes to retry the case; it merely allows the real party in interest to take over the postjudgment appeal of legal issues that the disinterested executors could have but would not have pursued. Forbes could have intervened earlier; but Sheehan does not complain that Forbes' failure to do so prejudiced her. Nor is it true that Forbes' motion to vacate was not made within 15 days of notice of entry of judgment as demanded by Code of Civil Procedure section 663a. The May memorandum order was not a final judgment. After it issued, the executors requested findings and conclusions, rendering the May order a proposed judgment only (Code Civ. Proc., § 632); final judgment did not enter until September. Thus Forbes' motion to vacate was premature, but that should not be deemed a jurisdictional error. (1) Finally, Sheehan argues that in probate one cannot appeal a denial of a motion to vacate since Probate Code section 1240 does not list it as an appealable order. (But see 6 Witkin, Cal. Procedure, Appeal, § 108.) It is possible that technically Forbes should have appealed from the final judgment entered three weeks after its motion to vacate was denied. But even if this is so, this court may and should construe the present appeal as an appeal from the final judgment. (Cal. Rules of Court, rule 2(c).) We proceed to the merits.
It is contrary to "public policy" to allow an executor, administrator, or trustee of an estate to be paid for legal services he or she renders to the estate.[1] One must hire a third party or perform such services without compensation. (Estate of Parker (1926) 200 Cal. 132, 135, 137 *369 [251 P. 907, 49 A.L.R. 1025]; Estate of Hart (1962) 204 Cal. App.2d 634, 639 [22 Cal. Rptr. 462].) The fear is that without the Parker rule attorney-executors would be tempted to defraud the estates entrusted to them. (Estate of Lankershim (1936) 6 Cal.2d 568, 572 [58 P.2d 1282]; Estate of Parker, supra, 200 Cal. at pp. 139-140.) On the ground that executors who hire themselves as accountants for the estate entrusted to them have a comparable opportunity to commit fraud, the trial court here held the Parker rule applicable to the latter group.
The prohibition against attorney-executor self-dealing is neither an ancient nor immutable principle of the common law. Even in its first full-blown articulation of the rule, in Estate of Parker, supra, 200 Cal. 132, the California Supreme Court indicated that the Legislature could authorize the practice if it wished.[2] In fact many legislatures and/or courts have done just that.[3] And in those states where this has not occurred the courts have frequently deemed it inadvisable to extend the rule to any class other than attorneys.[4] (2) It is therefore dispositive of this case that in Probate Code section 902 the California Legislature has stated rather clearly that executors of an estate can be compensated for accounting services they provide to that estate.
Probate Code section 901 establishes the schedule by which an executor will be paid for ordinary services rendered to the estate. Section 902 authorizes additional payments to executors who perform extraordinary services and also authorizes executors to hire others to perform those tasks:
"Such further allowances may be made as the court may deem just and reasonable for any extraordinary services, such as sales or mortgages of real or personal property, contested or litigated claims against the estate, the preparation of estate, inheritance, income, sales or other *370 tax returns, or the adjustment or litigation or payment of any of said taxes, litigation in regard to the property of the estate, the carrying on of the decedent's business pursuant to an order of the court, and such other litigation or special services as may be necessary for the executor or administrator to prosecute, defend, or perform. [¶] The executor or administrator may also employ or retain tax counsel, tax auditors, accountants, or other tax experts for the performance of any action which such persons, respectively, may lawfully perform in the computation, reporting, or making of tax returns, or in negotiations or litigation which may be necessary for the final determination and payment of taxes, and pay from the funds of the estate for such services." While the grammar of the first paragraph makes a definite reading of the statute impossible, it seems clear that two phenomena are anticipated and approved: 1) that executors will hire third parties to do the accounting work necessitated by the probating of the estate, in which case the executors are free to arrive at a contract with such parties without court approval; or 2) that executors will perform tax-related services themselves, in which case the probate court will decide what the services are worth. The apparent conclusion that the Legislature has authorized self-dealing by executor-accountants and that the Parker rule is inapplicable to such persons is bolstered by an examination of the 1939 and 1951 amendments that produced the current statutory language.[5]
Sheehan argues that section 902 cannot be construed according to its plain meaning because the statute also appears to authorize attorney self-dealing yet such is prohibited by judicial rule. We point out two things, however: first, that judging by the opinions in this area, no California court has ever been asked to square the Parker rule with section 902;[6] and second, that the statute is much less ambiguous with respect to authorizing accounting services than it is with respect to authorizing legal services.
*371 The judgment is reversed and remanded for a determination of the just and reasonable fees, if any, owed Forbes.
White, P.J., and Feinberg, J., concurred.
Respondent's petition for a hearing by the Supreme Court was denied May 14, 1980. Mosk, J., Manuel, J., and Newman, J., were of the opinion that the petition should be granted.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Forbes concedes that the executor's law firm also cannot perform legal services and be paid for them.
[2] "[T]he general rule is that [the executor who elects to act as his own attorney] ... will not be entitled to an allowance against the estate for his professional services, in the absence of some statutory provision entitling him thereto." (200 Cal. 132, 135-136, italics added; see also Estate of Thompson (1958) 50 Cal.2d 613, 615 [328 P.2d 1].)
[3] See citations in Bogert, Law of Trusts and Trustees (2d ed. rev. 1978) section 543(M), page 324-325 footnote 58; 3 Scott, The Law of Trusts (3d ed. 1967) section 242.2, page 2115 footnotes 2-3. See also the Model Probate Code (§ 103) prepared by the American Bar Association (in Simes, Problems in Probate Law (1946)); the cases cited in Annotation (1959) 65 A.L.R.2d 809 and supplements; and Note, Lawyers Serving as Executors and Trustees (1972) 7 Real Prop., Prob. & Tr. J. 745, 745-748.
[4] See Scott, supra, note 3 at page 2118.
[5] The 1939 amendment, following the reference to contested or litigated claims against the estate, inserted "the preparation of estate, inheritance, income, sales or other tax returns which require the appointment of a tax counsel, tax auditor or other tax expert for the preparation thereof." (Stats. 1939, ch. 766, § 1, p. 2297.)

The 1951 amendment, in the first paragraph, deleted from the provisions which had been added in 1939 the words "which require the appointment of a tax counsel, tax auditor or other tax expert for the preparation thereof" and it added the second paragraph as set out in the text. (Stats. 1951, ch. 1604, § 1, p. 3607.)
[6] This applies equally to those cases following Parker (Estate of Hart (1962) 204 Cal. App.2d 634, 639 [22 Cal. Rptr. 462]; Estate of Lair (1945) 70 Cal. App.2d 330, 336 [161 P.2d 282]; and Estate of Vokal (1953) 121 Cal. App.2d 252, 260 [263 P.2d 64]), and those reaffirming Parker in the context of distinguishing it on and not applying it to the relevant facts. (Estate of Thompson (1958) 50 Cal.2d 613, 615 [328 P.2d 1]; Estate of Lankershim (1936) 6 Cal.2d 568, 572 [58 P.2d 1282]; Conservatorship of Gray (1970) 12 Cal. App.3d 513, 521 [90 Cal. Rptr. 776]; Estate of Crouch (1966) 240 Cal. App.2d 801, 802 [49 Cal. Rptr. 926]; Estate of Anderson (1958) 166 Cal. App.2d 39, 43 [332 P.2d 785]; Estate of Scherer (1943) 58 Cal. App.2d 133, 139-140 [136 P.2d 103].) The version of section 902 with which Parker itself was concerned was very general, stating only that: "In all cases, such further allowance may be made as the court may deem just and reasonable for any extraordinary service...." (Stats. 1909, ch. 152, § 1.)